WISCONSIN STATE TELEPHONE ASSOCIATION et al., Plaintiffs-Appellants and Cross-Respondents,

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN, Defendant-Respondent and Cross-Appellant.

Court of Appeals

*No. 81–508. Submitted on briefs October 19, 1981.— Decided October 23, 1981.*
(Also reported in 314 N.W.2d 873.)

For the plaintiffs-appellants and cross-respondents the cause was submitted on the briefs of *Ray J. Riordan, Jr.*, of Madison.

For the defendant-respondent and cross-appellant the cause was submitted on the briefs of *Steven M. Schur,* chief counsel, and *Steven Levine,* assistant chief counsel, Public Service Commission of Wisconsin, Madison, WI.

Before Bablitch, J., Dykman, J. and Foley, J.

DYKMAN, J. Plaintiffs brought this declaratory judgment action to have a Public Service Commission (PSC) rule declared invalid and to enjoin its enforcement. Plaintiffs argue that the rule violates due process, and that the PSC failed to follow proper procedure and exceeded its statutory authority in promulgating it. The trial court rejected plaintiffs' arguments and entered judgment in favor of the PSC. We affirm.

The PSC held a rule-making hearing on February 22, 1979, to investigate potential rules regarding telephone company billing practices. Notice of the hearing appeared in the Wisconsin Administrative Register. The notice set forth the text of a proposed amendment to sec. PSC 165.05, Wis. Adm. Code, which required certain information to be provided on all long distance telephone bills. The notice also stated that parties to the proceeding should consider four related subjects, including "Separate listings and a separate total of credit card calls including taxes."

By order dated August 30, 1979, the PSC adopted the amendment to sec. PSC 165.05, Wis. Adm. Code, with the following addition:

(d) Credit card calls will be listed separately and a separate subtotal of the billed amount, including taxes, will be included on the customer portion of the long distance telephone bill.

Plaintiffs commenced this action and a hearing on a temporary injunction was held December 18, 1979. The circuit court entered an order on February 6, 1980, stay-

ing the effective date of the rule until further order of the court. The court entered judgment on February 12, 1981, finding the rule as promulgated to be valid. The court extended the stay to July 15, 1981, to give plaintiffs time to comply with the rule. This court extended the stay by order dated July 28, 1981, pending disposition of the appeal.

Plaintiffs raise the following issues on appeal:

1. Is the rule invalid because of the PSC's failure to comply with proper rule-making procedures?

2. Does the rule exceed the PSC's rule-making authority?

3. Is the rule an unreasonable regulation of plaintiffs' businesses in violation of due process?

The PSC cross-appeals. The sole issue it raises is whether the circuit court abused its discretion in granting a temporary stay of enforcement of the rule.

*(1)  Compliance With Rule-Making Procedure*

The PSC adopted amended sec. PSC 165.05, Wis. Adm. Code, by order dated August 30, 1979. On September 4, 1979, copies of that order were sent to the appropriate assembly and senate committees, and to the joint committee for review of administrative rules. The adopted rule was sent to the revisor of statutes on November 8, 1979. Plaintiffs argue that the PSC nonetheless failed to comply with sec. 227.018(2), Stats. (1977),[1] which provides:

An agency shall notify members of appropriate standing committees of the legislature when rules and revisions or repeals thereof are in final draft form. *The notice shall include a brief summary of the draft.* Within

[1] Section 227.018(2) was repealed by sec. 1019uf, ch. 34, Laws of 1979. A modified form of the notice requirement was created by sec. 1019ug, ch. 34 and sec. 2, ch. 270, Laws of 1979. *See* sec. 227.018(2), Stats. (1979).

30 days of receiving the notice, a committee which received it may direct the agency to meet with it to review the draft. If a committee requests such meeting, the agency may not proceed with the draft until after the meeting. If no committee requests such meeting within 30 days or if the meeting is requested and not held within 30 days of the date of the request, the agency may then proceed with the draft. This subsection shall not apply to emergency rules. [Emphasis supplied.]

Plaintiffs contend that a final draft of the rule should have been sent to the legislative committees before the rule was adopted. The statute includes no such requirement. A rule is not valid until a certified copy of it has been filed in the offices of the secretary of state and the revisor of statutes. Section 227.023(1), Stats. Until then it is inoperative and nothing more than a final draft. The fact that the final draft was adopted by the PSC does not change its status as a final draft prior to its filing in the appropriate offices.

Plaintiffs complain that this interpretation of the statute gives no effect to the statute's purpose of providing the legislative committees with input to the rule-making process. This is not so. A legislative committee may require an agency to meet with it whether or not the agency has adopted the final draft of a rule. If such a meeting is requested, the agency may not submit the rule to the revisor of statutes until after the meeting has taken place. The committees therefore receive input into the rule while it remains in the final draft stage.

The PSC waited more than thirty days after sending copies of the final draft of the rule to the legislative committees before it submitted the rule to the revisor of statutes. It therefore complied with the terms of sec. 227.018(2), Stats. (1977).

Plaintiffs next contend that the notice which appeared in the administrative register was misleading. They allege that setting forth the text of the proposed rule relating to billing information (sec. PSC 165.05(1)(a)–(c), Wis. Adm. Code) while including only a summary of the credit card billing proposal could cause readers to believe that the credit card billing proposal was relatively unimportant or unlikely to be adopted. We find nothing confusing about the wording or form of the notice. The notice stated that the PSC would consider requiring "Separate listings and a separate total of credit card calls including taxes." This is not a case in which the rule as adopted bore little resemblance to what was contained in the notice. Plaintiffs' reliance on *HM Distributors of Milwaukee v. Dept. of Agri.*, 55 Wis. 2d 261, 268, 198 N.W.2d 598, 603 (1972) is therefore misplaced.

In a related argument, plaintiffs claim the notice was statutorily defective. Section 227.021(3)(b), Stats. (1977),[2] provides:

(3) The notice which this section requires an agency to give shall include:

. . . .

(b) Either the express terms or an informative summary of the proposed rule, or a description of the subject matter to. be discussed . . . .

Plaintiffs read this statute to require a notice to state the express terms of a rule, or to summarize it, or to describe its subject matter, but not to allow a combination of any of these methods.

Statutes must be construed in light of their purpose. *Johnson v. Misericordia Community Hospital,* 99 Wis. 2d

---

[2] Section 227.021(3)(b) was amended by sec. 1019um, ch. 34 and sec. 711g, ch. 221, Laws of 1979.

708, 734, 301 N.W.2d 156, 169 (1981). The purpose of sec. 227.021(3), Stats., is to assure that interested persons receive adequate notice of what will be discussed at a rule-making hearing. That purpose is served if the agency includes "a description of the subject matter to be discussed." The PSC did so in stating it would consider "Separate listings and a separate total of credit card calls including taxes." The fact that it chose to set forth the express terms of the remainder of the proposed rule does not destroy the effectiveness of the notice regarding credit card billing. Plaintiffs' interpretation of the statute would serve no purpose and is therefore unreasonable. An unreasonable interpretation of the statute must be rejected. *State v. Yellow Freight System, Inc.*, 101 Wis. 2d 142, 153, 303 N.W.2d 834, 839 (1981).

We conclude the PSC properly complied with rule-making procedures.

## (2) Authority to Promulgate Rule

Plaintiffs contend the PSC has exceeded its delegated power by regulating the placement of credit card calls on telephone billings. They assert that the rule does not foster the purpose of regulation, which they claim is to assure the public of reasonable and adequate telephone service.

The PSC "is vested with power and jurisdiction to supervise and regulate every public utility in this state, and to do all things necessary and convenient in the exercise of such power and jurisdiction." Sec. 196.02(1), Stats. This language has been interpreted as granting "the broadest of legitimate powers . . . to enable [the commission] to supply all details of administrative work. . . . There is administrative authority to the limit, involving *quasi*-legislative as well as *quasi*-judicial power." *Calumet Service Co. v. Chilton*, 148 Wis. 334, 364–65, 135 N.W. 131, 143 (1912). This broad grant of power

includes the authority to regulate utility billing practices.

Plaintiffs nonetheless contend that the rule is invalid because it does not promote reasonable and adequate telephone service, but instead creates confusion, increases cost, and benefits almost no one. The supreme court has held that the "primary purpose of the public utility laws in this state is the protection of the consuming public." *Wis. Environmental Decade v. Public Service Comm.*, 81 Wis. 2d 344, 351, 260 N.W.2d 712, 715–16 (1978). A regulation which makes a telephone bill more convenient for some consumers fosters the goal of consumer protection. We therefore reject plaintiffs' argument.

Plaintiffs also contend the PSC has exceeded the limits of its power by interfering with managerial discretion in determining billing formats. The cases relied upon by plaintiffs establish that the PSC is vested with no managerial powers. *Missouri ex rel. S. W. Bell Telephone Co. v. Public Serv. Comm.*, 262 U.S. 276, 288–89 (1923); *Wisconsin Telephone Co. v. Public Service Comm.*, 232 Wis. 274, 328, 287 N.W. 122, 148 (1939), *cert. denied*, 309 U.S. 647 (1940). This doctrine prevents the PSC from disallowing a reasonable item of expense which was paid by the company in good faith in the exercise of business judgment. No case cited by plaintiffs holds that deference to managerial discretion prevents regulation of a utility's billing practices. Any regulation may be contrary to the desires of business management; that in itself does not render the regulation invalid. The question involved in the cases cited by plaintiffs was whether money spent by a utility was subject to disallowance by a regulatory agency when it determined rates. That type of retroactive interference with managerial discretion was prohibited in the absence of bad faith on the part

of the utility. Interference of that sort is not an issue in this case. We are dealing with a rule that is prospective only, the costs of which will be included in rates charged by plaintiffs.

The PSC is "granted a great deal of latitude in regulatory matters, because of the expertise of the agenc[y]." *Wis. Environmental Decade,* 81 Wis. 2d at 351, 260 N.W.2d at 716. The PSC could reasonably conclude that the rule fosters the goal of consumer protection by requiring a more convenient billing format. This is not a case in which the PSC has gone beyond the limits of its power to make a decision exclusively within the province of management. We therefore conclude that managerial discretion has not been improperly invaded.

### (3) Due Process

Plaintiffs contend there is no reasonable basis for a rule requiring credit card calls to be listed separately on a telephone bill. They suggest their present billing format provides the same information in a more advantageous way. They assert that the challenged rule is so unwise and unnecessary that it violates due process.

When a litigant attacks legislative regulation, a court's inquiry is severely limited.[3] The nature of and reason for this limitation are explained in *Pacific States Box & Basket Co. v. White,* 296 U.S. 176, 182 (1935):

Whether it was necessary in Oregon to provide a standard container for raspberries and strawberries; and, if

---

[3] This limitation applies whether the regulation takes the form of legislation or an administratively made rule. "[W]here the regulation is within the scope of authority legally delegated, the presumption of the existence of facts justifying its specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies." *Pacific States Box & Basket Co. v. White,* 296 U.S. 176, 186 (1935).

so, whether that adopted should have been mandatory, involve questions of fact and policy, the determination of which rests in the legislative branch of the state government. The determination may be made, if the constitution of the State permits, by a subordinate administrative body. With the wisdom of such a regulation we have, of course, no concern. We may enquire only whether it is arbitrary or capricious.

Due process requires that an administrative rule, to be valid, must be reasonably related to the purpose for which it was promulgated. *See Thompson v. Consolidated Gas Utilities Corp.*, 300 U.S. 55, 69–70 (1937); *Josam Mfg. Co. v. State Board of Health,* 26 Wis. 2d 587, 596, 603, 133 N.W.2d 301, 307, 310 (1965). A regulation is arbitrary if there are no facts to justify its enactment.

It is not necessary for the facts justifying the regulation to be of record. When a regulation is challenged as arbitrary, the test for the court to apply is whether "any state of facts reasonably can be conceived that would sustain it . . . ." *Pacific States Box & Basket,* 296 U.S. at 185, quoting *Borden's Farm Products Co. v. Baldwin,* 293 U.S. 194, 209 (1934). Courts will presume that facts exist which sustain the challenged regulation, and the burden is on the challenger to rebut the presumption. *Id.* In Wisconsin, the presumption may be rebutted only by "proof beyond a reasonable doubt that the rules do not bear any reasonable relationship" to the purpose for which the rule was promulgated. *Josam,* 26 Wis. 2d at 603, 133 N.W.2d at 310.

The purpose of public utility regulation, as we have noted, is the protection of the consuming public. We can reasonably conceive of facts which justify the challenged rule in light of that purpose. The separate listing of credit card calls with a separate total could be convenient

for a person who uses a credit card exclusively for business calls. The separate itemization of calls and the separate total that person would receive might be of benefit in keeping accounting or tax records. Plaintiffs' representatives testified before the circuit court that such a person could benefit from the rule.

Plaintiffs argue that since there was no proof that such a hypothetical person exists, there is no basis for the rule. This argument misapprehends the role of the court. So long was we can reasonably imagine that facts justifying the rule exist, we must presume that they do. Plaintiffs assumed the burden of establishing beyond a reasonable doubt that such consumers do not exist or would not be benefitted by the rule. Plaintiffs' reliance on the rule that a hypothetical question cannot be asked at trial unless its underlying facts are proved to a reasonable certainty is therefore misplaced.

Plaintiffs argue that customers can obtain a fictitious billing number and obtain the separate credit card billing now if they so choose. It is not clear from the record that all telephone companies now offer such a service or that it is publicized. In any event, the PSC chose to require the information to be provided to all consumers who use credit cards without the necessity of obtaining the fictitious number. The fact that some companies use a different method of providing the information to some customers that they are now required to provide to all credit card customers does not make the rule arbitrary or capricious.

Plaintiffs argue the rule is disadvantageous in that it destroys the chronological order of the bill and will require costly changes in billing format. Whether the costs and disadvantages of the rule outweigh its advantages is a question appropriate for resolution by the PSC rather than by the courts, for it is that agency which has the

expertise to answer it. We agree with the circuit court that the rule seems to be of questionable merit because it forces all customers to pay for a service that benefits but a few of them. That court correctly concluded, however, that facts can be reasonably conceived which justify the rule's promulgation as a means of offering additional convenience to the telephone consumer, and that the presumption had not been rebutted beyond a reasonable doubt. That is where our inquiry ends.

*(4) Temporary Injunction*

The PSC contends that the circuit court abused its discretion in ordering a temporary injunction. Our disposition of this appeal renders that question moot since its resolution will have no impact upon an existing controversy. *State ex rel. McDonald v. Douglas Cty. Cir. Ct.,* 100 Wis. 2d 569, 572, 302 N.W.2d 462, 463 (1981).

The PSC asks us to exercise our discretion to review the issue despite its mootness. We review moot questions only if they are of great public importance, if the constitutionality of a statute is involved, or if the situation arises so frequently that a definitive decision would be an essential guide to trial courts. *Ziemann v. Village of North Hudson,* 102 Wis. 2d 705, 712, 307 N.W.2d 236, 240 (1981). The rules governing the issuance of injunctive relief are well-settled. The resolution of this issue is therefore not of great public importance. The constitutionality of a statute is not at issue.

The PSC argues that trial courts may disregard the law governing the issuance of injunctions unless this court renders a decision on this issue. We do not believe trial courts routinely act in disregard of well-established precedent, nor do we believe our reiteration of that precedent would provide them with additional guidance.

The PSC further argues that our failure to review this moot issue would make the granting of temporary injunctive relief an issue that would never be subject to appellate review since such orders are not final. The availability of a petition for leave to appeal from a nonfinal order makes this argument unpersuasive. Section 808.03(2), Stats.

*By the Court.*—Judgment affirmed.