IN RE the MARRIAGE OF:
Janet L. DRIER, Petitioner,
and
Joseph P. DRIER, Respondent,

SAUK COUNTY CHILD SUPPORT AGENCY, Appellant,

v.

Janet L. DRIER and Joseph P. Drier, Respondents.

Court of Appeals

No. 82–1784. Submitted on briefs October 3, 1983.—
Decided May 10, 1984.
(Also reported in 351 N.W.2d 745.)

For the appellant the cause was submitted on the briefs of *Mary Grzechowiak Holliday,* assistant district attorney for Sauk County.

For the respondents the cause was submitted on the brief of *Jorge Luis Fuentes,* of Dodgeville.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.   The Sauk County Child Support Agency (agency) appeals from that portion of a divorce judgment holding open an award of child support for the parties' three minor children, and ordering the husband to pay the monthly mortgage payments, taxes and insurance on the parties' homestead.[1]   As a result of the order,

[1] The agency has standing in the action pursuant to sec. 767.075, Stats., as amended by sec. 2202(57)(c), 1983 Wis. Act 27, which provides:

Whenever aid under s. 49.19 or 49.45 is provided a dependent, the state shall be deemed a real party in interest within the meaning of s. 803.01 for purposes of securing reimbursement of aid paid, future support and costs as appropriate in an action affecting the family.

the agency is presently unable to collect reimbursement through the wife's child support assignment for public assistance payments made to her under ch. 49, Stats. The sole question on appeal is whether the trial court abused its discretion in failing to order present child support payments by the husband. We hold that under the circumstances of this case it did not. We therefore affirm the judgment.

The parties were married in 1963 and had four children, three of whom were minors at the time of the final hearing. The wife, an unemployed housewife, commenced this action in March 1982. At that time, the husband was a mechanical press operator with a net income of $400 per week. Pursuant to the temporary order, he continued to reside with his family in a home the couple had purchased four years previously. No child support was ordered, but the husband was required to assume responsibility for the couple's preexisting debts and to deposit his wages in the joint checking account for the use of both parties during the pendency of the action.

In April, the wife applied for aid to families with dependent children (AFDC) under ch. 49, Stats., and signed a support assignment form pursuant to sec. 49.19 (4) (h) 1.b.[2] In May, the husband was indefinitely laid

---

*See also* sec. 767.08 (3), Stats. (state has same right as individual to compel support from spouse for purpose of seeking reimbursement for public assistance); sec. 767.15 (pleadings in actions affecting families receiving public assistance must be served on county child support agency); sec. 767.29 (2) (party entitled to maintenance or support may assign right thereto to county agency pursuant to court approval, and agency shall thereafter be deemed a real party in interest for purpose of securing unpaid maintenance and support); sec. 767.32 (1) and (4) (agency may petition to revise and alter judgment respecting child support or maintenance).

[2] Section 49.19 (4) (h) 1.b, Stats. (1981–82), provided in material part:

off from his employment. In June, the parties' eldest child turned eighteen, and the wife signed a new support assignment reflecting a reduction in the number of her AFDC-eligible dependents from four to three.

At the time of the final hearing in August 1982, the husband's sole income was $191 per week in unemployment compensation which was due to expire, unless extended, at the end of January. He had no immediate prospects of returning to work. The wife's sole income was $547 per month in AFDC benefits. She was hospitalized at a drug and alcohol abuse treatment facility, from which she was due to be released in a few days. The husband was still residing in the parties' home. Although he had not located another place to live, he planned to move out of the home when the wife returned from the hospital. The eldest child, who planned to attend school, continued to reside in the home.

The couple had filed Chapter 13 bankruptcy proceedings during the pendency of the divorce action. Pursuant to those proceedings, they entered a repayment program covering all debts except the mortgage, and requiring payment of $68.17 per week for the next three years. The husband had assumed this obligation, together with the mortgage obligation of approximately $107 per week, for a total weekly payment of about $175. This left him about $16 per week from his unemployment compensa-

---

As a condition of eligibility for assistance under this section, the person charged with the care and custody of the dependent child or children shall:

. . . .

b. Notwithstanding other provisions of the statutes, be deemed to have assigned to the state, by applying for aid under this section, any rights to support from any other person that the parent and the dependent child or children may have, including rights to unpaid amounts accrued at the time such application for aid is made as well as any rights to amounts accruing during the time for which aid is paid under this section.

tion to meet his own needs. He had been unable to pay the full amount owing to the bankruptcy trustee and was paying $25 or $30 per week, as he was able, with the understanding that he would make up the balance when he returned to work.

Prior to the hearing, the parties executed a stipulation as to custody, property division, and support. The stipulation granted custody of the minor children to the wife and awarded items of personal property to each party. The only substantial marital asset was the home, which the parties owned in joint tenancy. The stipulation provided that the joint tenancy would be terminated and that the husband and wife would hold the property as tenants in common until its eventual sale.

The stipulation required the husband to continue paying the mortgage, taxes, and insurance on the property. Sale was to occur upon the wife's death, remarriage, or removal from the home, when the youngest child reached the age of eighteen (or nineteen if attending school), or at the agreement of the parties. The net sale proceeds were to be divided equally between the parties.

The husband was also to be responsible for all debts incurred prior to the commencement of the action. The stipulation designated no specific amount for child support, but provided that it "shall be set by the Court." It required the husband to notify the wife and the clerk of courts when he resumed his employment.

The agency approved the stipulation through its counsel's signature on the document. At the final hearing, however, it contended through the same counsel that the wife should be ordered to make the $428 per month mortgage payment out of her $547 monthly AFDC allotment, and that the husband should be ordered to pay some lesser amount by way of child support. Otherwise, it noted, there would be no record of payments made under the judgment, the agency would be unable to assist the wife

by bringing enforcement proceedings, and the taxpayers would be unable to obtain any reimbursement through the child support assignments for AFDC payments made to the wife. The agency acknowledged that such an order might necessitate the sale of the home because of the wife's inability to meet the mortgage payments. It asserted, however, that it was "not the obligation of the . . . agency to see that divorced couples maintain their residence."

The trial court rejected the agency's arguments and approved the stipulation. At the agency's request, however, it ordered that the husband make monthly reports to the agency concerning his employment status "so they can keep tabs on it," rather than merely report his return to work as the stipulation provided.

A determination of child support is committed to the sound discretion of the trial court and will not be reversed on appeal except for an abuse of that discretion. Proper exercise of discretion rests upon an assessment of the needs of the custodial parent and the ability of the noncustodial parent to pay. A needs assessment considers factors including the custodial parent's assets and income, any special needs that parent may have, the age and health of parent and children, and their customary station in life. An assessment of ability to pay considers the noncustodial parent's income, assets and debts, age and health. *Edwards v. Edwards*, 97 Wis. 2d 111, 116, 293 N.W.2d 160, 163 (1980). " 'These determinations are to be made upon the basis of the circumstances existing at the time of the divorce.' " *Id.* (quoting *Anderson v. Anderson*, 72 Wis. 2d 631, 643, 242 N.W.2d 165, 171 (1976) ).

The agency claims that the trial court abused its discretion by failing to consider that the wife was an AFDC recipient, that the husband had an obligation to support his children, and that the state was entitled to reimbursement

through the mechanism of child support assignments for the AFDC benefits it provided.[3] It asserts that as a result of the trial court's order, the state will be unable to recoup any amount of those benefits. The crux of its position appears to be that the trial court has an obligation to order the husband to pay the amount he is found able to afford by way of child support, which would automatically go to the agency pursuant to the support assignment, rather than to divert these funds towards the payment of marital obligations beyond the reach of the agency.

We note first that the agency is incorrect in its claim that the trial court's order forever forecloses it from recovering any portion of the amounts paid to the wife in AFDC benefits. Section 49.195, Stats.,[4] allows the county

[3] The respondents argue that the agency is estopped from raising this issue because it approved the stipulation. The stipulation, however, left the child support award to the court's discretion. While it should have been obvious to the agency that approval of the debt repayment plan outlined in the stipulation would render the husband unable to pay any additional amount in child support under his present circumstances, we will not find that the agency is estopped from questioning discretion exercised after the stipulation was executed.

[4] Section 49.195, Stats., as amended by secs. 1044, 1045, 1983 Wis. Act 27, provides in part:

(1) If any parent at the time of receiving aid under s. 49.19 or at any time thereafter acquires property by gift, inheritance, sale of assets, court judgment or settlement of any damage claim, or by winning a lottery or prize the county granting such aid may sue the parent on behalf of the department to recover the value of that portion of the aid which does not exceed the amount of the property so acquired. During the life of the parent, the 10-year statute of limitations may be pleaded in defense against any suit for recovery under this section; and if such property is his or her homestead it shall be exempt from execution on the judgment of recovery until his or her death or sale of the property, whichever occurs first. Notwithstanding the foregoing restrictions and limitations, where the aid recipient is deceased a claim may be filed against any property in his or her estate and the statute of limita-

to sue a parent who, at the time of receiving AFDC or thereafter, acquires property by court judgment or by sale of assets. Whether or not the agency has a present claim against the wife for aid up to the amount of her one-half equity in the homestead,[5] it will have such a claim against her under this statute when the property is sold. *See also* sec. 49.08, which allows suit against a relief recipient who owns property at the time of receiving relief or thereafter under certain circumstances. To the extent the trial court's order affects the agency's rights of recovery against the wife, it increases the chances that an asset which would otherwise have to be liquidated will be preserved and subject to eventual execution of judgment in the event the agency exercises its statutory rights.

The agency has no comparable right of direct suit against the husband under these statutes, however, because they provide for recovery only against the "immediate recipient" of the relief. *In re Estate of Bundy,* 81 Wis. 2d 32, 37, 259 N.W.2d 701, 704 (1977); *Richland County Dept. of Soc. Serv. v. McHone,* 95 Wis. 2d 108, 110, 288 N.W.2d 879, 881 (Ct. App. 1980). As this court noted in *State ex rel. v. Reible,* 91 Wis. 2d 394, 397, 399–400, 283 N.W.2d 427, 429–30 (Ct. App. 1979), those sections of the divorce code which provide specific means of

tions specified in s. 859.01 shall be exclusively applicable. The court may refuse to render judgment or allow the claim in any case where a parent, spouse or child is dependent on the property for support, and the court in rendering judgment shall taken into account the current family budget requirement as fixed by the U.S. department of labor for the community or as fixed by the authorities of the community in charge of public assistance. . . .

[5] In this case, as in *State ex rel. v. Reible,* 91 Wis. 2d 394, 398, 283 N.W.2d 427, 429 (Ct. App. 1979), there was no determination whether the wife's share of the homestead as a tenant in common under the divorce judgment constituted an acquisition by her of property within the meaning of sec. 49.195, Stats., or as to other factors the court must consider before rendering judgment under that statute.

receiving reimbursement of AFDC benefits from the non-custodial spouse are all predicated on an assignment of support entitlement from the custodial spouse, which grants the state only those rights held by the aid recipient and provides no source of recovery independent of that entitlement.[6] Consequently, the agency has no way to re-

---

[6] *See, e.g.,* sec. 767.08 (3), Stats., as amended by sec. 1756, 1983 Wis. Act 27, which provides in part:

If the state or any subdivision thereof furnishes public aid to a spouse or dependent child for support and maintenance and the spouse, person with legal custody or nonlegally responsible relative fails or refuses to institute an appropriate court action under this chapter to provide for the same, the person in charge of county welfare activities, the county child support agency or the state department of health and social serices shall have the same right as the spouse, person with legal custody or nonlegally responsible relative to initiate an action under this section, for the purpose of obtaining support and maintenance.

*See also* sec. 767.29 (2), Stats., which provides:

If any party entitled to maintenance payments or support money, or both, is receiving public assistance under ch. 49, the party may assign the party's right thereto to the county department of social services or public welfare or municipal relief agency granting such assistance. Such assignment shall be approved by order of the court granting the maintenance payments or support money, and may be terminated in like manner; except that it shall not be terminated in cases where there is any delinquency in the amount of maintenance payments and support money previously ordered or adjudged to be paid to the assignee without the written consent of the assignee or upon notice to the assignee and hearing. When an assignment of maintenance payments or support money, or both, has been approved by the order, the assignee shall be deemed a real party in interest within s. 803.01 but solely for the purpose of securing payment of unpaid maintenance payments or support money adjudged or ordered to be paid, by participating in proceedings to secure the payment thereof. Notwithstanding assignment under this subsection, and without further order of the court, the clerk of court, upon receiving notice that a party or a minor child of the parties is receiving aid under s. 49.19, shall forward all support assigned under s. 49.19 (4) (h)1 or 49.45 (19) to the department.

cover against the husband or his separate share of the property unless an award designated as support is made.[7]

The agency cites no statutory or case authority for its proposition that an award designated as child support is compelled under these circumstances, and we know of none. Section 767.25(1), Stats., provides that the court "may" order child support after considering certain specified factors.[8] None of these factors addresses the interest

---

[7] In *State ex rel. v. Reible*, 91 Wis. 2d 394, 397, 399–40, 283 N.W.2d 427, 429–30 (Ct. App. 1979), this court approved, in *dicta*, an increase in child support sought by the county agency funded by an "accumulating lien" on the husband's share of the homestead. We stated that there was "no question that the [trial] court acted properly under sec. 247.30, Stats." (present sec. 767.30), which authorizes the imposition of a lien on specific real estate as security for ordered support payments. 91 Wis. 2d at 397, 283 N.W.2d at 429. Although *Reible* does not specify to whom the lien was payable, the agency was presumably entitled to recover against the accumulation under its assignments from the wife. The agency has not pursued this method of recovery in this case, however, and the trial court did not consider it. The availability of such a method of reaching the husband's equity meets the concerns expressed by the dissenting opinion.

[8] Section 767.25(1), Stats. (1981–82), which has since been amended in ways not material to this appeal, provided:

Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(f) or (j) or 767.08, the court may order either or both parents to pay an amount reasonable or necessary for support of a child and shall specifically assign responsibility for payment of medical expenses, after considering the guidelines for the determination of child support established by the department of health and social services and considering:

(a) The financial resources of the child.

(b) The financial resources of both parents as determined under s. 767.255.

(c) The standard of living the child would have enjoyed had the marriage not ended in annulment, divorce or legal separation.

(d) The desirability that the custodian remain in the home as a full-time parent.

of a child support agency in collecting reimbursement for AFDC or other relief payments.

In *Whitwam v. Whitwam*, 87 Wis. 2d 22, 37, 273 N.W. 2d 366, 373 (Ct. App. 1978), this court recognized that "[t]he protection of the general taxpaying public and the reduction of welfare costs are laudable goals" as reflected in the variety of ways the legislature has provided to achieve them. Those goals are certainly appropriate factors for consideration in making a child support determination, under sec. 767.25(1)(i), Stats. (1981–82), as evidenced by the legislature's conferring of limited standing on agencies such as the appellant in family law actions.[9]

The legislature has not decreed, however, that the goal of taxpayer reimbursement takes precedence over the traditionally paramount goal of the best interests of the children, or that it be served at the cost of devastating assets necessary to familial support. To the contrary, in each statute providing for direct recovery of relief the legislature has expressly provided that the court may refuse to allow a claim for recovery whenever a parent, spouse or child is dependent on such property for support. Secs. 49.08 and 49.195, Stats.[10] Section 49.195 also provides

(e) The cost of day care if the custodian works outside the home, or the value of custodial services performed by the custodian if the custodian remains in the home.

(f) The physical and emotional health needs of the child.

(g) The child's educational needs.

(h) The tax consequences to each party.

(i) Such other factors as the court may in each individual case determine to be relevant.

[9] *See supra* note 1.

[10] *See also* sec. 52.01, Stats., which authorizes the district attorney to bring an action against a parent and/or spouse of dependent persons to compel support, but requires the court to consider those relatives' "own future maintenance and [to make] reasonable allowance for the protection of the property and invest-

that a parent's homestead is exempt from execution on a judgment for recovery of AFDC benefits until the parent's death or the earlier sale of the property. These provisions reflect the realistic concern that persons deprived of the material means of self-sustenance in order to repay their debt for public assistance may be forced to resort again to that assistance in order to survive. In that event, the burden on the taxpayer would inevitably increase.

The stipulation approved by the trial court constituted a temporary accommodation of the harsh realities faced by this family without necessitating a sale of its only significant asset, and the consequent dislocation of the mother and children from their home of four years. In approving it, the trial court underscored the temporary nature of the arrangement by making it clear that child support would be reconsidered as soon as the husband was reemployed, and by requiring him to make monthly reports to the agency concerning his job status. The trial court had a right to conclude that this accommodation, which defers the agency's right to recover through the support assignment, is preferable to insuring the agency's immediate recovery through an award of child support which would not benefit the children for whom it was ordered. The trial court could reasonably have concluded that the only alternative proposed by the agency, which would have forced a sale of the home and necessitated the relocation of all members of the family, might well have resulted in a far greater long-range cost to the taxpayer than the short-term benefits which could be gained in present reimbursement.

There is no statutory requirement that child support be ordered in all cases where need and ability to pay are es-

ments from which they derive their living and their care and protection in old age . . . ."

tablished. There is no statutory prohibition against applying the noncustodial parent's available income towards an obligation whose payment benefits the children entitled to his or her support. We find no legal impediment to the flexible approach taken by the trial court under the difficult circumstances presented by this case. We therefore conclude that it did not abuse its discretion in utilizing that approach.

The agency's reply brief asserts for the first time that the trial court also abused its discretion by failing to consider guidelines established by the Department of Health and Social Services for making child support determinations, as required by sec. 767.25, Stats. The guidelines referred to in the statute were issued by the department in February 1982 but were never promulgated as a rule.[11] Guideline (4)(d) provides that "payment of debts may not be deducted [from a parent's available income] unless nonpayment of those debts would prevent him/her from functioning as a wage earner." The agency asserts that the trial court's conclusion that the husband was unable to pay child support was based upon deductions of the mortgage and bankruptcy payments from his unemployment compensation income in violation of this guideline.

This argument was not made to the trial court.[12] The agency did not supply a copy of the guidelines for the court's consideration at trial. It approved the stipula-

[11] The guidelines were disseminated in February 1982 by the division of economic assistance, Wisconsin Department of Health and Social Services, in the form of a pamphlet entitled "Child Support: Guidelines for the Determination of Child Support Obligations" DEA–1003 (issued 8/81). The guidelines were later published as an addendum to Day, *Wisconsin Child Support Guidelines*, 2 Wis. J. Fam. L., Sept. 1982, at 10, 14.

[12] Arguments raised for the first time on appeal are generally deemed to have been waived. *Doe v. Ellis*, 103 Wis. 2d 581, 592, 309 N.W.2d 375, 379 (Ct. App. 1981).

tion requiring the husband to make the monthly payments in question and leaving the issue of child support to the sole discretion of the trial court. The guidelines are advisory, not mandatory. Day, *Wisconsin Child Support Guidelines*, 2 Wis. J. Fam. L., Sept. 1982, at 10, 11. We conclude that the trial court did not abuse its discretion in omitting to consider the guidelines under the these circumstances.

*By the Court.*—Judgment affirmed.

GARTZKE, P.J. I dissent. The trial court ordered the husband to pay child support in the guise of mortgage payments and payments for property taxes and insurance. The order circumvents the wife's assignment to the state of her right to support. That assignment was made to reimburse the state for its payments of AFDC to her. The effect of the trial court's order is to continue the wife's AFDC, to order the husband to pay support, and to give the state nothing.

The state cannot be fully reimbursed under the trial court's order. The state cannot reach the husband's one-half interest in the home, for he does not receive AFDC. But because he has the one-half interest, he will retain the benefit of one-half of every payment of principal he makes on the mortgage, and he is entitled to a tax deduction for all the mortgage interest and the property taxes he pays. These deductions may be of considerable benefit to him when he returns to work. The state has recourse for its AFDC payments only against the wife's one-half interest in the home, and then only after the home is sold or on her death. While the amount of the parties' equity in the home does not appear in the record on appeal, the AFDC payments probably will quickly exceed her one-half interest in the equity.

I would hold the trial court abused its discretion by enabling the parties to circumvent the rights of the state to the financial advantage of the husband.