IN RE the PATERNITY OF A.S.D.: STATE of Wisconsin EX REL. S.M.D., Petitioner-Appellant,

V.

F.D.L., Respondent.

Court of Appeals

No. 84–1771. Submitted on briefs June 17, 1985.— Decided July 18, 1985. (Also reported in 372 N.W.2d 921.)

For the petitioner-appellant the cause was submitted on the brief of *John Kasimatis* and *John Kasimatis Law Offices* of Madison.

For the respondent the cause was submitted on the brief of *David J. Meier* of Madison.

Before Gartzke, P.J., Dykman, and Eich, JJ.

EICH, J.   S.M.D., the mother of A.S.D., appeals from an order directing the child's father to pay support. The issues are whether the trial court erred in: (1) applying the percentage of income standards specified in sec. 767.51(5m), Stats., to the particular circumstances of

this case; and (2) determining the father's gross income.

We conclude that the court erroneously applied the percentage standards but properly determined the father's income. We therefore affirm in part and remand to the trial court for further proceedings.

## USE OF THE PERCENTAGE OF INCOME STANDARDS

The trial court may use one of two methods to determine child support in paternity proceedings. The court may take evidence and arrive at a figure after considering the several factors set forth in sec. 767.51(5), Stats.[1] One of the factors specified in the statute is the parent's responsibility for the support of others. In lieu of this procedure, pursuant to sec. 767.51(5m), the court may use the percentage standards adopted by the Department of Health and Social Services under the authority of sec. 767.395(3). The standards allow support to be set at stated percentages of the father's adjusted gross income.[2] For one child the rate is seven-

---

[1] Section 767.51(5), Stats., provides:

Except as provided in sub. (5m) . . . a court enforcing the obligation of support shall consider . . . any relevant facts, including but not limited to:
  (a) The needs of the child.
  (b) The standard of living and circumstances of the parents.
  (c) The relative financial means of the parents.
  (d) The earning ability of the parents.
  (e) The need and capacity of the child for education, including higher education.
  (f) The age of the child.
  (g) The financial resources and earning ability of the child.
  (h) The responsibility of the parents for the support of others.
  (i) The value of services contributed by the custodial parent.

[2] Identical provisions in sec. 767.25(1p), Stats., allow use of the same standards in lieu of the statutory criteria for setting child support in divorce cases.

teen percent, for two twenty-five percent, and for three twenty-nine percent.[3]

The standards do not appear in the administrative code, and the only evidence in the record as to their development and promulgation are an explanatory legal memorandum prepared by one of the department's attorneys and a cover memorandum from the secretary of the department to members of the Wisconsin judiciary. While the paucity of information on the manner in which the standards were adopted is a matter of concern, this issue was not raised in the trial court, and the parties have not briefed it on appeal. Although an appellate court may, *sua sponte,* consider an issue not raised by the parties, *Shea v. Grafe,* 88 Wis. 2d 538, 545, 274 N.W.2d 670, 674 (1979), we will usually decline to do so, and we see no reason to depart from that practice in this case.

The percentage standards were developed by the department at the specific direction of the legislature. They represent the department's estimate of the amount parents spend on their children—expressed as a percentage of income—assuming the "family were to remain intact."[4] The assumption is consistent with the stated purpose of the child support provisions of ch. 767, Stats., which is to provide children of separated parents the same standard of living they would have enjoyed had the family remained intact. Sec. 1, ch. 105, Laws of 1977. The three-child figure of twenty-nine percent, then, assumes that all three children live under one roof, and the seventeen percent figure assumes a single-child household.

[3] Department of Health and Social Services Memorandum to Members of the Wisconsin Judiciary, December 20, 1983, Attachment I, p. 3.

[4] Department of Health and Social Services Memorandum, *supra* note 3, at 1.

In this case, the father has two other minor children from a prior relationship, one of whom lives with him and one with its mother in another state. A.S.D. is the father's sole child with S.M.D., and even though A.S.D. was the only one for whom support was sought in this case, the trial court concluded that the "one-child" percentage was inapplicable because of the father's support obligations to his other two children. The court noted that if the seventeen percent figure were to be applied to each of his three children, he would be paying out a total of fifty-one percent of his adjusted gross income for child support, whereas the maximum amount payable under the guidelines (for five or more children) is only thirty-four percent. The court ruled that even though each of the father's three children lives in a different household with a different parent, because there are three, the guidelines dictate that he not pay more in total support than the three-child, twenty-nine percent figure. Accordingly, the court calculated twenty-nine percent of his adjusted gross income and, because "[f]airness indicates that he should share with [his children] equally," it divided that figure by three, setting support for A.S.D. at $125 per month.

We agree with the trial court that application of the one-child percentage to serial children living in separate households could lead to unreasonable results—a father of five such children would be required to pay eighty-five percent of his gross income in support—and no statute should be construed so as to work an unreasonable or absurd result. *State v. Clausen,* 105 Wis. 2d 231, 245, 313 N.W.2d 819, 826 (1982). But it is arguable that application of the trial court's formula would work similar inequities on the children. The first in time of the three successive children would receive seventeen percent of the father's income, the second twelve and one-half (one half of twenty-five) percent, and the third

only nine and one-half (one third of twenty-nine) per-cent. Using the father's monthly income of $1,280, the first child would receive $218 per month, the second $160, and the third $124, even though each lives in a separate, single-parent home.

Avoidance of financial hardship for the children of divorced or separated parents is the basic purpose of the child support laws. Sec. I, ch. 105, Laws of 1977. The percentage guidelines established under sec. 767.395(3), Stats., were developed by the department on the assump-tion of intact, not serial, families. It follows that appli-cation of these percentages to successive children living in separate households is inappropriate. In such situa-tions, the court may not use the guidelines but must hear the evidence and proceed to establish support by apply-ing relevant criteria under sec. 767.51(5). We therefore reverse and remand on this issue with directions to the trial court to determine support under sec. 767.51(5) on the record as made or after further hearings if deemed appropriate.

## CALCULATION OF THE FATHER'S ADJUSTED GROSS INCOME

The trial court calculated the father's adjusted gross income as the starting point for application of the per-centage of income standards, and S.M.D. disputes this calculation. While we have determined that the per-centage standards may not be employed in this case, the trial court will have to consider the father's income in establishing support under sec. 767.51(5), Stats. We therefore proceed to decide the issue.

S.M.D. argues that the father has a total equity in his personal residence and two rental properties of approxi-mately $100,000, and that the "earning potential" of

that equity should be considered in calculating his income available for support. As a guide, S.M.D. would apply the current rate of return on United States Treasury Bills (8.45 percent) to estimate this "additional income" at approximately $729 per month.

The trial court considered the father's rental income, adding back depreciation on the property, in arriving at his adjusted gross income. The court rejected S.M.D.'s "Treasury Bill" argument, holding that: "To also add together the net value of these same assets and apply an artificial earnings percentage based on current treasury bill rates, as petitioner argues, would be to double count the income-earning potential of these assets and would not reflect any ability that respondent has to pay." With respect to the father's equity in his residence, the trial court found that the residence was not an income-producing property and concluded that his equity therein was not available for child support.

Determination of child support is discretionary with the trial court, and we will reverse only where there is an abuse of discretion. *In re Marriage of Drier & Drier,* 119 Wis. 2d 312, 318, 351 N.W.2d 745, 748 (Ct. App. 1984). The trial court discussed the evidence and set forth its reasons for ruling as it did. The court exercised its discretion and that exercise will not be disturbed on appeal if there is some reasonable basis for the determination. *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 49–50, 260 N.W.2d 658, 665 (1978).

There may be situations where a party's assets may be considered as available for the payment of child support. *Drier,* 119 Wis. 2d at 318, 351 N.W.2d at 748. In this case, however, the trial court's determination of the father's income was not unreasonable, and we affirm.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded for further proceedings consistent with this opinion.

DYKMAN, J. *(dissenting)*. I dissent because I would have required the parties to brief the question of whether the child support guidelines are a rule, and if so, whether the rule was validly enacted. I also dissent because I disagree with the majority's interpretation of sec. 767.51(5m), Stats.

## Guidelines as Rule

Section 767.395(3), Stats., reads "The department [of Health & Social Services] shall adopt a standard for determining a child support obligation based upon a percentage of the gross income and assets of either or both parents." Section 227.014(2)(a), Stats., permits agencies to adopt rules. Section 227.01(9) defines a rule:

"Rule" means a regulation, standard, statement of policy or general order (including the amendment or repeal of any of the foregoing), of general application and having the effect of law, issued by an agency to implement, interpret or make specific legislation enforced or administered by such agency or to govern the organization or procedure of such agency.

Section 227.01(11) is a list of exceptions to sec. 227.01 (9), none of which apply to the child support guidelines adopted by DH&SS. Section 227.023(1) provides: "A certified copy of every rule adopted by an agency shall be filed by the agency in the office of the secretary of state and in the office of the revisor of statutes. No rule is valid until a certified copy thereof has been so filed."

The child support percentage guidelines were not filed in the office of the revisor of statutes.[1] Calling regulations "guidelines" does not avoid the requirements of

---

[1] I have not considered whether the hearing required by secs. 227.021 and 227.02, Stats., was properly held. Rules enacted without compliance with statutory rule making procedures are invalid. Sec. 227.05(4)(a).

chapter 227. *Will v. H&SS Department*, 44 Wis. 2d 507, 517, 171 N.W.2d 378, 383 (1969). Sex discrimination guidelines were considered rules and because not properly filed, were held invalid in *Wisconsin Telephone Co. v. ILHR Dept.*, 68 Wis. 2d 345, 366, 228 N.W.2d 649, 660 (1975). Mimeographed instructions for renewal of real estate brokers licenses were held to be rules in *Frankenthal v. Wisconsin R.E. Brokers' Board*, 3 Wis. 2d 249, 253–54, 88 N.W.2d 352, 355 (1958). The validity of the child support guidelines should be determined as soon as possible because the issue affects many paternity and divorce cases. I would direct the parties to brief this issue.

*Construction of Sec. 767.51(5m), Stats.*

The majority concludes that trial courts are prohibited from using sec. 767.51(5m), Stats., as an alternative method of support setting where support recipients reside in separate households. It gives two reasons for this conclusion. (1) Using percentage standards can lead to inequitable results, and (2) a letter from the secretary of an executive branch agency interprets the statute to apply only to "intact families." I conclude that neither reason supports the majority's conclusion.

A. *Inequitable Results*

The majority states that the construction of sec. 767.51 (5m), Stats., adopted by the trial court leads to the conclusion that the father would pay $502.00 of his $1,280 monthly gross income for support. The arithmetical basis for the majority's conclusion is incorrect. The trial court found the father's gross income to be $1,280 per month, and applied that amount to the guideline multiplier of .29, resulting in a $377.00 monthly support obligation, or $125.00 per month per child. The trial court

ordered $125.00 per month support for the child involved in this action. The children are treated equitably.[2]

B. *Reivitz Letter*

Section 767.51(5m), Stats., became effective for actions commenced or judgments revised after July 1, 1983. On December 20, 1983, Linda Reivitz, Secretary of the State of Wisconsin Department of Health and Social Services wrote a letter to "Members of the Wisconsin Judiciary," explaining that the percentage standard is "our best estimate of the amount spent on children if a family were to remain intact." The majority concludes that this letter shows that the Department of Health and Social Services did not intend the application of percentage standards to support payors whose children live in separate households.

The legislature, not the Department of Health and Social Services, permitted the courts the option of using percentage standards when setting support in paternity cases. I am unconvinced that the interpretation placed on sec. 767.51(5m), Stats., by what Secretary Reivitz describes as "experts and related agency personnel, and . . . members of the judiciary and legal professions" is significant when determining whether the legislature intended sec. 767.51(5m) to be optionally available to trial courts in paternity actions. It is inappropriate for a court to rely on the statements of a member of the

---

[2] Though a first child receives 17 percent of a support payor's income, and two children each receive 12½ percent of the income, those figures merely reflect reality. The more people sharing an income, the less each receives. This is true as a matter of arithmetic, not family law. Though a support payor could pay differing amounts of support to successive children, that would occur only if the payor does not obtain a revision of the support judgment when another child is born. Section 767.32, Stats., permits revision of child support judgments. A support payor who voluntarily pays more support than required works no inequities on children.

legislature as to what the legislature intended when enacting a statute. *Labor & Farm Party v. Elections Board,* 117 Wis. 2d 351, 356, 344 N.W.2d 177, 180 (1984). Statements of an agency secretary ought not occupy a higher status than statements of legislators.

### Separation of Powers

The majority in effect excises sec. 767.51(5m), Stats., from the statutes, without either the usual analysis of a statute's meaning or a conclusion that the statute violates a constitutional limitation on legislative power. It does so because, in its judgment, the use of sec. 767.51 (5m) is inappropriate in cases including serial families. This court does not review the wisdom of legislative judgments, only whether that body exceeded its constitutional authority. *Milwaukee County v. District Council 48,* 109 Wis. 2d 14, 30, 325 N.W.2d 350, 357 (Ct. App. 1982). I do not believe a court is empowered to invalidate a statute because the court believes the statute, or its use, is inappropriate.

Courts are to uphold statutes if any state of facts reasonably can be conceived that would sustain the statute. *Wis. Tel. Ass'n v. Public Service Comm.,* 105 Wis. 2d 601, 611, 314 N.W.2d 873, 877–78 (Ct. App. 1981). The legislature could reasonably conclude that equity between support payors leads to greater compliance with court orders. The legislature could reasonably conclude that a percentage standard benefits children because consistent payment is more likely, absent disparate treatment of identically situated payors. The legislature could reasonably enact a non-discretionary support system to avoid the criticism that individual judges are able to cover unstated policy decisions under the nearly opaque blanket of judicial discretion.

I cannot presume, as does the majority, that the percentage standards were neither designed nor intended by

the legislature[3] to cover successive family units. This is a paternity case, not a divorce case. The legislature must have known that sec. 767.51(5m) applies to paternity cases, not divorce cases. The legislature is presumed to know that wives do not frequently commence paternity suits against their husbands to establish the paternity of the couple's children and provide for child support. The notion of a father being liable for support of children born to two mothers is not so unique or improbable that I can conclude, as does the majority, that application of percentage standards to children in more than one household was not foreseen when the legislature directed the optional use of percentage standards in paternity actions.

I am not sure what the legislature must do should it still intend that courts use percentage standards in paternity actions or in cases involving serial families. The policy behind their use remains, because the current legislature has adopted 1985 Wis. Act 29, secs. 2402 and 2403b. This legislation *mandates* that trial courts use percentage standards in setting child support in paternity cases unless the court finds by clear and convincing evidence that use of the standards is unfair to the child or the requesting party. It does not exempt fathers of children living in successive households from its operation.[4]

I would analyze sec. 767.51(5m), Stats., to determine whether the legislature intended to permit the use of percentage standards in paternity suits involving multifamily considerations. The primary source of statutory construction is the statute itself. *Stoll v. Adriansen,* 122

---

[3] The majority examines the intent of DH&SS, and does not address legislative intent. I have explained why I do not consider agency intent relevant.

[4] 1985 Wis. Act 29, sec. 3023(7) permits the Department of Health & Social Services to adopt support percentage standards which consider that child support is paid to children in two or more families.

Wis. 2d 503, 510, 362 N.W.2d 182, 186 (Ct. App. 1984). If the statutory language is plain and clearly understood, that meaning must be given to the statute. *Id.* I conclude the statute is clear and means what it says. I reach the same result under the plain meaning rule adopted in *City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 236, 332 N.W.2d 782, 787 (1983) (the spirit or intention of a statute should govern over the literal or technical meaning of the language used). The spirit or intent of sec. 767.51(5m) is to permit trial courts the option of using percentage standards, with no limitation on that discretion. Because neither party has asserted any constitutional infirmity in the use of sec. 767.51 (5m), I would not address that issue. The statute being clear and not proven unconstitutional, I would uphold its use by the trial court.