MARTIN, Respondent, v. MARTIN, Appellant.

*No. 71. Argued February 2, 1970.—Decided March 6, 1970.*
(Also reported in 174 N. W. 2d 468.)

For the appellant there was a brief and oral argument by *Richard J. Callaway* of Madison.

For the respondent there was a brief by *Ferry & Neupert* of Lake Mills, and oral argument by *John A. Neupert.*

BEILFUSS, J. The reported cases of this state *ad infinitum* all hold that the division of estate, award of support money, alimony and contribution to the wife's attorney's fees are all matters that must rest primarily in the discretion of the trial court, and this court will not reverse or modify without a clear showing of a disregard of a divorce statute, inadequate findings, findings against the great weight and clear preponderance of the evidence, or an abuse of judicial discretion.

Although the appellant's brief contends "the evidence supports the husband-defendant counterclaim," we will not consider that issue because it is not encompassed within the notice of appeal.

To present a statement of facts in this matter has been made much more difficult for the court because of the appellant's neglect to provide an adequate appendix and failure to comply with sec. 251.34 (5) (a), (b), (c) and (d), Stats. Henceforth, the court will see fit to affirm without opinion, and upon motion, impose double costs for these derelictions.

The parties were married on August 7, 1954. Both of them were about thirty-five years old. The plaintiff-wife had been married and divorced before. She had a five-year-old daughter, Jacalyn, whom she had previously adopted. This was the defendant's first marriage. Shortly after the marriage, he too, adopted Jacalyn. There were no other children.

The divorce was granted to the plaintiff-wife upon the grounds of cruel and inhuman treatment. We will not restate the evidence except to say a review of the voluminous record convinces us that the trial court was justified in finding the defendant had treated the plaintiff in a cruel and inhuman manner and that this conduct adversely affected her health entitling her to a divorce.

The court will first discuss the support money and alimony orders because of their relative unimportance to present issues between the parties.

The order fixed Jacalyn's support at $20 per month but to terminate on July 31, 1968, because Jacalyn would be considered emancipated as of that date. There is really no serious issue between the parties as to this matter,—it is moot, and the judgment is affirmed as to Jacalyn's custody and support money.

The plaintiff-wife was awarded $200 per month alimony. The testimony was that defendant-husband was earning approximately $9,000 per year at the time of the divorce judgment and that the plaintiff was in poor health with limited earning capacity. Under these circumstances we cannot conclude $200 per month alimony was excessive or an abuse of discretion on the part of the trial court. The alimony problem, too, has become moot. Because the notice of appeal did not encompass the provisions of the judgment awarding an absolute divorce, it became final one year after its pronouncement. The year has passed; she was advised she could remarry, and she has. The defendant's obligation to make alimony payments ceased upon her remarriage. The defendant's delinquencies, if any, in the alimony payments ordered until the time of plaintiff's remarriage are not at issue on this appeal and will not be considered.

The principal dispute between the parties is the division of estate. The trial court found the total assets of the parties at the time of the divorce trial to be $16,985.27; that the plaintiff-wife's separate estate (and in her possession) was $15,499.59 of this total, leaving a balance of $1,485.68. The trial court awarded the plaintiff $700 of this balance, which is about 47 percent.

The marriage was of a twelve-year duration. The husband claims that as of the time of the marriage his assets were $12,840, consisting of cash and farm live-

stock and machinery; that his wife's assets at that time were $2,832.59, and that his earnings throughout the marriage were jointly used.

The wife claims her separate estate contributed to the marriage was about $12,000 more than the $15,499.59 as found by the trial court.

It is apparent that at the time of the marriage the wife had an equity in some real estate in Madison, some household goods, and some cash. During the marriage she received inheritances from the estates of both her mother and her father.

Shortly after the marriage the parties bought a farm in the Lake Mills area. This farm was subsequently sold. The parties thereafter acquired two pieces of real estate in Lake Mills.

In an extensive memorandum opinion the trial court recapitulates the assets of the parties as of the time of the divorce trial and divides the estate as follows:

### RECAPITULATION

| | | |
|---|---|---|
| A. Equity in 129 Milton Street | | $5,367.94 |
| B. Net receipts of 126 Woodland Beach Road | | 7,131.65 |
| C. 1965 Mustang | | 1,800.00 |
| D. Furniture and Miscellaneous to plaintiff | | 1,200.00 |
| In hands of Plaintiff. | | $15,499.59 |
| E. N. Y. Life policy | $1,232.70 | |
| F. Motor Bike | 125.00 | |
| G. Tools | 50.00 | |
| H. Net refund check (in court) | 77.98 | |
| In hands of Defendant | $1,485.68 | |
| I. Lutheran Aid policy | ??? | |
| J. Franklin Life policy | $296.38 | |
| Assets for Jackie | ??? | |

III. *DETERMINATION AND EVALUATION OF PLAINTIFF'S SEPARATE ESTATE.*

| | |
|---|---|
| A. Equity from 609 Baldwin (see pretrial order (R. 90, R. 94) Pl. Ex. #4 (11–29–67) | $2,482.84 |
| B. Net proceeds from mother's home (see pretrial order (R. 90, R. 94) Pl. Ex. 11 (11–29–67) | 4,286.59 |
| C. Boot paid to purchase Ford (see pretrial Order (R. 92, R. 94) Pl. Ex. 9 (11–29–67) | 2,381.00 (R M) |
| D. Deposit in Anchor Savings & Loan (Pl. Ex. #8 (11–29–67) | 1,525.00 (R M) |
| E. Spent on trip to Mexico (balance of $5000) | 1,094.00 (R M) |

(Plaintiff inherited Lot 10, block 1, Power Replat in Madison from her mother about March 28, 1960 (closing). This real estate was appraised at $11,000 and was subject to a mortgage of $2,787.33 when appraised late in 1959. Pl. Ex. 6 (11–29–67) shows a mortgage dated April 1, 1960, whereby plaintiff borrowed $7,600 from Anchor Savings and Loan. Exhibit 8 is dated April 21, 1960. Ex. #9 is dated Apr. 20, 1960.

Plaintiff's testimony is that the mortgage balance was about $2600 and she borrowed $5000 more to pay these two checks and the balance of $1,094 was used for the trip.)

| | |
|---|---|
| F. Furniture taken to farm | $2,500.00 |

The testimony, especially on cross-examination satisfactorily establishes

this value which was a contribution in bulk to the marriage such as should be considered in determining separate estate.

G. Part of gift from father's estate    $1,500.00

This money did pass from a Greenwood's State Bank account to Anchor Savings & Loan by a check dated May 21, 1957, drawn by Sybil. She testifies that it was part of a $3000 gift that came to her from her father through her mother. The alleged gifts and contributions from the parents are not allowed except when otherwise corroborated. Since this substantial sum did in fact get into the assets of the party, it is allowed as part of plaintiff's separate estate.

H. Discount of III. E. .................... 
$15,769.43
269.84

$15,499.59

Plaintiff's testimony as to the remortgage was approximate. She knew the amount of the new mortgage ($7,600). But she testified to the $1,094 as the contribution to the cost of the trip to Mexico based on a belief that the existing mortgage was $2600. It probably was more than $2800 with accrued interest; and the closing costs of the new loan were not figured in arriving at the $1,094. Therefore this item will be discounted

by $269.84 which is a reasonable approximation. The only thing "scientific" about it is that the property now in possession of the plaintiff turns out to be equal to the amount of her separate estate. (If this is "speculation" unfair to the plaintiff it should be considered that the speculation at II. B. as to the extra funds in Federal Savings ($368.35) was resolved in her favor.

## IV. DIVISION OF ESTATE.

A. Plaintiff's Other Contributions to the Marital Estate.

Plaintiff testified to many other contributions and benefits to the marriage which came from her or from her parents. Many of these were uncertain to the extent that the Court could not accept them as items of her separate estate.

1. She had $1000 cash at the time of the marriage.

2. Her father, who died within a week of the marriage, had placed $3,000 for her in her mother's control. Only $1,500 of this was allowed, based upon a 1957 check. (See III. G.)

3. Furniture sold in connection with the sale of the Madison duplex said to have brought $350 to the marriage.

4. Gifts from her mother at the rate of $100 per month for 62 months. These were beyond proof. It was suggested that they went for Jackie and for Sybil's rather extraordinary medical needs.

5. Rent on Milton Street duplex was claimed to have provided $2,200 net.

6. Her own income from at-home typing for Hamlin, Inc., in the years 1961–1963.

Even if this testimony is discounted severely, it boils down to a contribution beyond what the wife ordinarily contributes. If it is considered that the marriage had the benefits of about $15,000 of her property during the twelve years of its duration, this alone would constitute a consideration that would justify more than one third of the marital estate; probably a full half.

It is considered that the Lutheran Aid and the Franklin Life policies are for Jackie and should go to her. Accordingly, any present value must be subtracted from the assets of the marriage. That leaves only $1,485.68 to divide. It is considered that the plaintiff should have $700 which is about 47%.

A review of evidence in the record does not show the findings of fact as to the amount and source of the assets to be contrary to the great weight and clear preponderance of the evidence and they therefore must be accepted by this court.

In the recent case of *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 383, 384, 173 N. W. 2d 142, in discussing the factors to be considered by the trial court in making a division of estate, we stated:

"Whatever is material and relevant in establishing a fair and equitable basis for division of the property of the parties may be considered. Such relevant factors certainly include the length of the marriage, the age and health of the parties, their ability to support themselves, liability for debts or support of children, general circumstances, including grievous misconduct, although a division is not a penalty imposed for fault. Whether the property award is in lieu of or in addition to alimony payments is a material factor. Whether the property was acquired during the marriage or brought to the marriage makes a difference. Since the Wisconsin statute provides that separate property of the wife, possessed by her before the marriage or acquired solely by her efforts, is to be awarded to her, the amount of

such separate estate is a proper factor to consider in determining how much of the husband's or marital property is also to be awarded to her. Additionally, in Wisconsin, where a trial judge is required to take affirmative steps to determine and protect the rights of minor children involved, sequestering a portion of present assets to provide for future needs of minor children may be a prudent precaution and proper provision in a property division determination."

We conclude that the division of estate ordered by the trial court in this case comes within the guidelines of *Lacey v. Lacey, supra;* that it does not constitute an abuse of discretion; and that it should be affirmed.

The defendant-husband contends the award to the plaintiff of $2,300 as a contribution to her attorney's fees is excessive.

The matter of allowance of attorney's fees in a divorce case is discretionary with the trial court, and as pointed out in *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 512, 155 N. W. 2d 130, the husband cannot be compelled to pay the entire amount of either attorney's fees or disbursements. The husband is only required to make a contribution toward them. *Wahl v. Wahl* (1968), 39 Wis. 2d 510, 159 N. W. 2d 651; *see also Johnson v. Johnson* (1969), 42 Wis. 2d 237, 166 N. W. 2d 230.

In this case the trial court stated it considered this payment to be only a contribution. The trial court's decision in respect to attorney's fees is as follows:

"Ordinarily, the financial situation being what it is, the Court would hold that the plaintiff was able to pay her own attorney and costs and no allowance as such would be made. But the defendant here subjected the plaintiff to four extra and completely needless trial days and at least two days in extra preparation and preliminary attention. Further, the unheard of appeal of a refusal to find the plaintiff in contempt, under the cir-

cumstances which have been discussed, must nevertheless have the attention of the plaintiff and her attorney. Defendant should pay the plaintiff $1500 for the 6 extra days of preparation, and trial and $800 for preparation, costs and appearance in the Supreme Court. This is not a finding of the worth of counsel's time (or even the extra time). It is a finding as to what defendant should contribute to the extra attorney's fees that the plaintiff will be required to pay by reason of defendant's 'overtrial.' "

It is obvious to us that the trial court was of the belief that the plaintiff-wife was put to a considerable portion of her attorney's fees liability because of the nature in which the defendant pursued the litigation. We believe that this element together with others was a fair basis for the fixing of the defendant's contribution to attorney's fees.

We will allow the plaintiff no additional attorney's fees for this appeal other than ordinary statutory costs. With this limitation we find the allowance of attorney's fees in the amount of $2,300 was not excessive and not an abuse of discretion.

*By the Court.*—Judgment affirmed.