IN RE the MARRIAGE OF: Margaret M. ONDRASEK,
Petitioner-Appellant and Cross-Respondent,

v.

Keith G. ONDRASEK, Respondent and Cross-Appellant.

Court of Appeals

*No. 84–1932. Submitted on briefs August 7, 1985.—
Decided October 9, 1985.*
(Also reported in —— N.W.2d ——.)

472

For the petitioner-appellant and cross-respondent, the cause was submitted on the briefs of *Thomas J. Janssen* of *Sigman, Shiff, Janssen, Stack & Wenning* of Appleton.

For the respondent and cross-appellant, the cause was submitted on the briefs of *Keith G. Ondrasek* of Chilton.

Before Scott, C.J., Nettesheim and Sullivan, JJ.

NETTESHEIM, J.   Margaret Ondrasek appeals and Keith Ondrasek cross-appeals from various terms of a judgment of divorce.

Margaret appeals the property division award, claiming that the trial court erred: (1) by excluding the accounts receivable of Keith's law firm; (2) in finding no value for the work in progress at the law firm, and (3) by discounting the value of real estate and a building of the law firm by the amount of estimated capital gains tax due upon their hypothetical sale. We affirm the trial court's valuation of the work in progress. We reverse the trial court's exclusion of accounts receivable. We also reverse the valuation of the real estate and building because we find the discount for future capital gains tax was speculative and unnecessary under the

facts of this case. Therefore, the matter of property division is remanded.

Margaret also appeals the award of family support, claiming that the trial court failed to make adequate findings and failed to consider the Department of Health and Social Services' guidelines. In addition, she claims that the award is unconscionably low. Although we reject Margaret's claims, we are compelled to also remand the matter of family support in light of our holdings on the property division issue.

As to the cross-appeal, Keith challenges the provision in the divorce judgment requiring him to contribute $5000 toward Margaret's attorney fees. We affirm the contribution award because we find no abuse of discretion.

Margaret and Keith Ondrasek were married on April 4, 1970. They have two daughters, both of whom are minors. After the marriage, Keith attended law school. At the time of trial, he practiced with the law firm of Engler, Ondrasek & Twohig, S.C., and was a forty-nine percent shareholder in the service corporation. At the time of the marriage, Margaret had a B.A. in nursing, and in August 1975, she received a master's degree in nursing. Since June 1974, Margaret has primarily engaged in homemaking and has not been employed full-time in the nursing field.

## PROPERTY DIVISION

Margaret challenges certain aspects of the property division award. First, she argues that the trial court erred by excluding the value of the law firm's accounts receivable from the marital estate. We agree and reverse.

The trial court excluded the value of the accounts receivable from the marital estate because no withdrawal

agreement existed awarding any portion of the accounts receivable to a withdrawing partner. The trial court held that "[a]bsent any agreement to pay out accounts receivable on withdrawal, accounts receivable cannot be considered in valuing respondent's interests."[1]

Generally, for marital property division purposes, the value of a partner's interest in a professional partnership is determined by the monetary consequences of that partner withdrawing from the business. *Lewis v. Lewis,* 113 Wis. 2d 172, 178, 336 N.W.2d 171, 174 (Ct. App. 1983). The trial court properly recognized that the same general principle applies in valuing the interest of a shareholder in a service corporation. Often, a buyout agreement between the partners or shareholders will provide the trial court with a method of determining the value of a withdrawing partner's or shareholder's interest in the business. No such agreement exists in this case.

Accounts receivable of a law partnership are assets appropriately valued for purposes of property division. *See, e.g., Wahl v. Wahl,* 39 Wis. 2d 510, 520–21, 159

---

[1] The trial court stated, in part:

When the respondent purchased his interest in the firm, he paid . . . for the physical assets, without consideration of accounts receivable or work in progress. One of the two non-shareholder associates left the firm in November, 1983 and negotiations on a possible buy-in were conducted on the same basis . . . . There is no evidence that any buy/sell agreement exists. There is no evidence that if respondent were to withdraw he would be paid any portion of . . . accounts receivable . . . .

. . . .

Withdrawal value must be applied to determine the respondent's interest in the professional corporation. Absent any agreement to pay out accounts receivable on withdrawal, accounts receivable cannot be considered in valuing respondent's interest. The capital account is the only value of the corporation in that the accounts

N.W.2d 651, 656–57 (1968), *overruled on other grounds,* *O'Connor v. O'Connor,* 48 Wis. 2d 535, 541, 180 N.W.2d 735, 739 (1970). We see no reason to fashion a different rule for purposes of a service corporation. The trial court acknowledged that the same rules should apply. In fact, each of the parties' expert witnesses valued these accounts receivable.[2]

We conclude that accounts receivable are assets of a service corporation and must be considered when valuing a shareholder's interest. Such accounts receivable should be excluded for valuation purposes only when there is an agreement providing that, upon withdrawal, the shareholder will *not* be compensated for his interest or share of the accounts receivable.

Here, we conclude the trial court adopted the exception as the rule and improperly burdened Margaret to disprove it. Thus, we hold the trial court erred in its conclusion that, absent an agreement to pay out accounts receivable upon withdrawal, accounts receivable could not be considered in valuing Keith's interest in the service corporation. Rather, we are persuaded that absent an agreement that accounts receivable will *not* be paid out

receivable and work in process were not considered when respondent purchased his interest, nor was it considered in further negotiations, nor is there any evidence that he would receive any part of the accounts receivable upon withdrawal.

[2] Keith's expert then proceeded to discount the accounts receivable because they represented an income stream to the service corporation for 1984 and would not be retained by the corporation. He further indicated that the accounts receivable should be used as an indicator of future earnings. This latter statement appears to be an allowance for the rule against considering an asset for purposes of property division and support or maintenance. *See Overson v. Overson,* 125 Wis. 2d 13, 20, 370 N.W.2d 796, 799 (Ct. App. 1985).

upon withdrawal, accounts receivable must be considered in a valuation determination.

The trial court found that no agreement—written, oral or tacit—between the shareholders addressed Keith's right to receive a share of the accounts receivable if he withdrew from the corporation. Without an express finding by the trial court that there was an agreement *not* to pay out accounts receivable, Keith's testimony that he would not assert a claim to the accounts receivable should not mandate a finding that such assets are without value or nonexistent.

Keith relies on *Holbrook v. Holbrook,* 103 Wis. 2d 327, 309 N.W.2d 343 (Ct. App. 1981), to support his position that the value of his capital account is the value of his interest in the service corporation. In *Holbrook,* the court of appeals stated that:

There is no dispute in this case that upon withdrawal from the partnership, John would be entitled to receive only his capital account value of $23,790. Ethically and contractually, he is prevented from otherwise disposing of his interest in Quarles & Brady. The capital account value is the only value that should have been assigned to his partnership as an asset.

*Id.* at 352, 309 N.W.2d at 355. In *Holbrook,* however, there was a partnership agreement which provided that the value of the capital account was the *only* amount to be paid if Holbrook left the firm. Here, the trial court found that Keith did not have such an agreement with the other shareholders. *Holbrook* does not say that accounts receivable can never be considered in valuing an interest in a law firm. Rather, *Holbrook* indicates that where a withdrawal or buyout agreement establishes which assets a withdrawing partner or shareholder

has an interest in, then only those assets are subject to marital property division. Our holding here is in keeping with this general rule.

The trial court's failure to consider the accounts receivable for purposes of property division could be salvaged under the family support provisions of the judgment if adequate reasons were stated and findings made linking Keith's salary and ability to earn with the accounts receivable. *See Johnson v. Johnson,* 78 Wis. 2d 137, 143, 254 N.W.2d 198, 201 (1977).

The trial court considered the accounts receivable as the equivalent to salary. In considering the amount of alimony and support to be awarded, it looked to Dr. Johnson's salary and his ability to pay. It was not error to view the receivables as salary. If Dr. Johnson remained with the clinic the receivables would be paid as salary. If he left, they would take the place of salary while he established his new practice. Because the receivables were viewed as salary, it would have been error to include them in the assets available for distribution.

*Id.* at 143, 254 N.W.2d at 201–02.

In *Johnson,* the trial court expressly considered accounts receivable as salary. We are uncertain from the trial court's findings in the present case whether it viewed the accounts receivable as salary. The trial court's findings do not provide any link between the value of the accounts receivable and the findings relating to Keith's income and ability to pay. Because an express finding was not made, this court has no way of knowing whether the accounts receivable were considered salary. Thus, we cannot affirm the property division here on the *Johnson* rationale.

While property division and family support are separate awards, they are interdependent and cannot be made in a vacuum. *See, e.g., Bahr v. Bahr*, 107 Wis. 2d 72, 78–79, 318 N.W.2d 391, 395–96 (1982). We therefore reverse and remand both the property division and family support rulings. Upon remand, the trial court may include the accounts receivable in the marital estate for purposes of property division and consider the effect, if any, upon the family support award. Alternatively, if the trial court chooses to exclude the accounts receivable from the marital estate, it must state sufficient reasons as to how the accounts receivable affected the finding as to Keith's ability to pay. In addition, the trial court must then make a finding that the accounts receivable were treated as salary.

Margaret also challenges the valuation of work in progress. The trial court valued the work in progress at the law firm as having "little or no value" and did not consider work in progress in valuing Keith's interest in the law firm. We will not upset the trial court's valuation of a marital asset unless it is against the great weight and clear preponderance of the evidence. *Holbrook*, 103 Wis. 2d at 334, 309 N.W.2d at 347. In other words, the valuation must be clearly erroneous. *See* sec. 805.17 (2), Stats.

The trial court's finding that the work in progress had little or no value is not clearly erroneous. Patrick Walsh, a CPA, testified that the work in progress had little value because it was billed out every month and at that point became an account receivable. As a result, Walsh testified that the work in progress should not be included in determining the value of Keith's interest

in the law firm. Although Margaret's expert, Donald Peterson, testified that work in progress at the firm had a value of $60,790, the trial court noted in its decision that Peterson based his calculation on a formula and had no information as to the work actually in progress. Furthermore, the trial court noted that Peterson had no experience in valuing law firms with contingent-fee income. The weight of the evidence and the credibility of the witnesses are matters within the province of the trial court. *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 42, 260 N.W.2d 658, 661 (1978). We will not disturb the trial court's valuation.

Margaret also argues that the trial court improperly considered capital gains taxes in determining the value of real estate and a building owned by the service corporation. We agree and reverse.

In dividing the marital property upon divorce, the trial court is directed to consider the tax consequences to each party. Sec. 767.255 (10), Stats. The trial court must be aware of the tax consequences *of its rulings and any proposed division. Wetzel v. Wetzel,* 35 Wis. 2d 103, 110–11, 150 N.W.2d 482, 486 (1967). A trial court is not obliged to consider the tax consequences of a hypothetical or theoretical disposition of marital property. *See Wahl,* 39 Wis. 2d at 518, 159 N.W.2d at 655.

Here, the trial court discounted the value of real estate and a building owned by the service corporation by the amount of capital gains tax due if the real estate and building were sold. There is nothing in the record to suggest that such a sale is imminent. The judgment of divorce creates no taxable event as far as these assets are concerned, nor is there evidence that the judgment would force such a sale in order to comply with its terms. We conclude that the trial court erred in discounting

the value of the real estate and the building by the amount of estimated capital gains tax due on a hypothetical sale. We reverse and remand with directions that the property division be adjusted accordingly.

## FAMILY SUPPORT[3]

We next consider the propriety of the family support award. Family support is a substitute for maintenance and child support. *See* sec. 767.261, Stats. In awarding family support, the trial court must assess the family's needs and the paying spouse's ability to pay. *Corliss v. Corliss*, 107 Wis. 2d 338, 348, 320 N.W.2d 219, 223 (Ct. App. 1982). It is within the discretion of the trial court to determine the appropriate amount of family support, *Jasper v. Jasper*, 107 Wis. 2d 59, 63, 318 N.W.2d 792, 794 (1982), and our review is therefore limited to whether the trial court abused its discretion, *Corliss* at 348, 320 N.W.2d at 223.

First, Margaret claims that the trial court "failed to make any findings whatsoever regarding the paying spouse's ability to pay." We disagree. The trial court expressly found that Keith received an annual salary of $65,000 and ordered him to make payments of $1250/month.[4] The trial court also noted that Keith received occasional bonuses from the collection of large contingent

---

[3] In light of the property division holding, we are not necessarily required to address the remaining issues raised on this appeal. However, we recognize that these same issues may present themselves upon remand to the trial court. We therefore choose to address them.

[4] Keith was ordered to make family support payments of $2000/month for four months in order to assist Margaret and the children with the "extraordinary expenses" they would incur in relocating in Madison, Wisconsin.

fees but that collection of such fees was not likely in the next year. Citing these facts, the trial court found that Keith had the ability to pay $15,000 annually, in monthly installments of $1250, for family support. These findings adequately address Keith's ability to pay.

Moreover, the trial court considered the proposed expenses of Margaret and the children. It also considered Margaret's earning ability and found that she could contribute to the support of the children and was obliged to do so. The tax consequences resulting from the family support order were also considered by the trial court. These additional findings support the trial court's family support order as a proper exercise of discretion. These findings also refute Margaret's claim that the order is unconscionably low.

Margaret also argues that the trial court abused its discretion as to the amount of family support because it did not consider the child support guidelines established by the Department of Health and Social Services. Although sec. 767.25 (1m), Stats., mandates consideration of the guidelines together with the other nine statutory factors, we have held that these guidelines are discretionary rather than mandatory. *See Sauk County Child Support Agency v. Drier*, 119 Wis. 2d 312, 326, 351 N.W. 2d 745, 752 (Ct. App. 1984). Furthermore, the failure to consider the guidelines is not necessarily an abuse of discretion. *Id.*[5]

---

[5] We note that sec. 767.25(1m), Stats., has been recently amended to provide that percentage standards set by the department now control a support determination unless the court finds by clear and convincing evidence that the use of the percentage standard is unfair to a child or to any of the parties. Sec. 2361, 1985 Wis. Act 29. We are not called upon here to decide whether *Drier* applies to the new statute.

## ATTORNEY FEES

On cross-appeal, Keith argues that the trial court abused its discretion by ordering him to contribute $5000 to Margaret's attorney fees. We find no abuse of discretion and affirm.

The award of contribution to attorney fees rests within the discretion of the trial court and will not be altered on appeal unless an abuse of discretion is shown. *Kastelic v. Kastelic*, 119 Wis. 2d 280, 290, 350 N.W.2d 714, 719 (Ct. App. 1984). In ordering the contribution, the trial court explicitly relied on *Martin v. Martin*, 46 Wis. 2d 218, 228–29, 174 N.W.2d 468, 474 (1970), *overruled on other grounds, O'Connor v. O'Connor*, 48 Wis. 2d 535, 541, 180 N.W.2d 735, 739 (1970).

In *Martin*, the supreme court upheld an order requiring the defendant to contribute to the plaintiff's attorney fees because the trial court found that the plaintiff "was put to a considerable portion of her attorney's fees liability because of the nature in which the defendant pursued the litigation." *Martin* at 229, 174 N.W.2d at 474. The trial court in *Martin* explained that ordinarily it would require the plaintiff to pay her own attorney fees, but the defendant's "overtrial" of the matter caused needless days of trial and extra preparation time. We find *Martin* applicable here.

After finding Margaret's attorney fees reasonable, the trial court explained its reasons for ordering Keith to contribute to the fees:

The assets in this case included a professional service corporation which was difficult to value, and about which information was difficult to obtain. Respondent did not employ counsel during the early part of this action, which contributed to larger attorney's fees to the petitioner than might otherwise have been incurred. $5,000

is an appropriate contribution by the respondent to the petitioner's attorney's fees.

The trial court also indicated that it was required to hold hearings and rule on questions which noninvolved counsel would ordinarily have resolved by stipulation. While the trial court recognized Keith's right to represent himself, it found that the manner in which the case was handled created extremely high costs. The trial court concluded that "a least that portion or amount of the attorney fees [$5000] was necessitated by what the Court views as an unreasonable . . . approach to the case."

Keith complains that the trial court did not make the usually required findings of need and ability to pay relative to attorney fees. While this is true, we read *Martin* as eliminating the need for such findings in situations where there is "overtrial," such as here. As a matter of sound policy, an innocent party who is the victim of "overtrial" should not be burdened with the payment of extra and unnecessary attorney fees occasioned by the other party. Based on the trial court's reasoning and its opportunity to view the parties and assess their actions vis-a-vis the case, we find no abuse of discretion. We affirm the provision of the judgment which requires Keith to contribute $5000 to Margaret's attorney fees.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.