IN RE the MARRIAGE OF: Patricia Ann JOHNSON, Petitioner-Respondent,

v.

Bruce Hinton JOHNSON, Respondent-Appellant.

Court of Appeals

*No. 94–3425. Submitted on briefs November 20, 1995.—Decided January 17, 1996.*

(Also reported in 545 N.W.2d 239.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Michael S. Heffernan* of *Foley & Lardner* of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Lee F. Clavey* and *Amy L. Shapiro* of *Calvey, Lara & Shapiro, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   In this divorce case, Bruce Hinton Johnson contends that the family court erred by: (1) allowing Bruce's counsel to withdraw from the case six days before the trial; (2) precluding him from presenting all his evidence; and (3) awarding $35,000 in "overtrial" attorney's fees to his former spouse, Patricia Ann Johnson.

We conclude that Bruce was given reasonable advance notice of his counsel's intention to withdraw and that he was not precluded from presenting his evidence. However, we further conclude that the family court erred by failing to first determine the reasonableness of Patricia's attorney's fees before making the

attorney's fees award. We therefore reverse the attorney's fees portion of the judgment, and we remand for further proceedings on that limited issue.

## BACKGROUND

The parties were married on August 24, 1968. On December 27, 1991, Patricia filed for divorce. Bruce is a dentist whose income exceeded $100,000 in each of the four years preceding the divorce. During the marriage, Bruce had exclusive control over the family's financial matters and did not take a regular salary, but took funds out of his dental practice receipts as they became available. Patricia is a registered nurse; however, she had not been actively employed in her profession since 1983 due to a degenerative disease of the lower lumbar disc in her back. At the time of the divorce, Patricia was unemployed and had no earned income.

During the pretrial phases of the divorce, both Bruce and Patricia changed attorneys. When the action was commenced, Patricia was represented by Attorney David Nichols, and Bruce was represented by Attorney John Zacherl. In September 1992, Patricia retained Attorney Lee Calvey, and in November 1993, Bruce retained Attorney Diane Diel. Diel began experiencing difficulties with Bruce, and in April 1994, she sought to withdraw her representation of him. Shortly thereafter, she transferred portions of his file to another attorney. Six days before the case was scheduled to go to trial in June 1994, the trial court held a hearing and permitted Diel to withdraw.

Bruce did not obtain an attorney to represent him at either the withdrawal hearing or the divorce trial. He appeared at both proceedings pro se and testified at each on his own behalf.

371

In its written decision after considering the parties' posttrial briefs, the family court determined, inter alia, that Bruce had engaged in overtrial. The court detailed the protracted history of the case and found that because of Bruce's conduct during the proceedings, "[Patricia] incurred legal expenses far in excess of what reasonably would otherwise have been incurred." The court ordered Bruce to pay $35,000 of Patricia's attorney's fees.

Bruce appeals. We will recite additional facts as we address the appellate issues.

DISCUSSION

*Withdrawal of Counsel*

Bruce first argues that the trial court misused its discretion when it allowed his attorney to withdraw from the case six days before the scheduled trial date. He maintains that although there may have been sufficient grounds for the withdrawal, the trial court failed to consider his "ability to obtain new counsel or his ability to represent himself adequately." We disagree.

The circumstances under which an attorney may withdraw from the representation of a client are governed by Supreme Court Rule. *See* SCR 20:1.16 (West 1996). The general rule is that although a lawyer has justifiable cause for withdrawing from a case, the attorney is not entitled to withdraw until the client has been given "reasonable notice and opportunity to obtain substitute counsel." *Sherman v. Heiser,* 85 Wis. 2d 246, 251, 270 N.W.2d 397, 399 (1978). Thus, Bruce's ability to obtain substitute counsel or to adequately prepare for trial was dependent upon whether he was given such reasonable notice.

On June 21, 1994, Diel stated at the withdrawal hearing that she did not communicate well with Bruce and that he had become hostile and antagonistic towards the advice she had given him. Diel stated that she had notified Bruce in April 1994 of her desire to withdraw from the case. In May 1994, Bruce contacted Diel and asked her to prepare a stipulation and order for substitution of counsel. As a result, Diel had numerous discussions with an alternate attorney and even transferred portions of the file to the new attorney. Although the documents were already signed by Diel, Bruce never went to the new attorney's office to sign them.

Bruce arrived late at the withdrawal hearing. He entered as the trial court was announcing that the matter would proceed to trial as scheduled on June 27, 1994. When the trial court asked Bruce if he had any remarks, he responded, "Well, I came here to say that I wish that [Diel] would not dismiss herself from the case. That is all I have to say." Bruce did not complain to the trial court that he had not received adequate notice of Diel's desire to withdraw.

■

In response to Bruce's comment, the trial court recounted the protracted history of the case, including the prior notice provided to Bruce by Diel of her intention to withdraw. The court observed that the Johnsons' divorce case had been pending for more than two years, and Bruce was well aware of the June 27, 1994, trial date. As early as April 1994, Bruce received notice of Diel's desire to withdraw, and in May, Bruce himself asked Diel to transfer his file to another attorney. Based on this record, together with Bruce's failure to squarely raise the issue he now asserts on appeal, we

see no misuse of discretion by the trial court in allowing Diel to withdraw.

■

Bruce argues, however, that this case is akin to *Sherman* and that the trial court erred by failing to consider the option of postponing the trial. We disagree for two reasons. First, as we have noted, Bruce failed to ask the family court for this relief. We generally do not review issues raised for the first time on appeal. *Lenz Sales & Serv. v. Wilson Mut. Ins. Co.,* 175 Wis. 2d 249, 257, 499 N.W.2d 229, 232 (Ct. App. 1993). Thus, Bruce's argument is waived.

Second, on the merits, this case is not factually like *Sherman.* There, the trial court permitted counsel to withdraw on the day of trial when the client failed to appear. The supreme court reversed this ruling because the client had not received prior notice of the intent to withdraw. *Sherman,* 85 Wis. 2d at 256, 270 N.W.2d at 401. Under those circumstances, the court said that the trial court had two options: (1) adjourn the proceeding, or (2) deny the withdrawal request. *Id.* at 255-56, 270 N.W.2d at 401. The supreme court pointedly noted in *Sherman* that it was reversing "under the facts in this case." *Id.* at 251, 270 N.W.2d at 399. Here, as we have already demonstrated, Bruce had received adequate advance notice of his attorney's intent to withdraw. *Sherman* does not govern this case.

### Fair Trial

Next, Bruce argues that the trial court denied him the right to a fair trial when it interrupted his narrative testimony and did not give him the opportunity to develop his case. We have independently examined the trial court record and briefly summarize what occurred.

Before Bruce testified, the trial court summarized for him the evidence that had been presented by Patricia regarding the valuation of the Johnsons' property. The court explained that the issues before the court were the division of the parties' personal property and Patricia's maintenance request. The court also clarified for Bruce that because their children were adults, there were no support issues. By these remarks, the court explained the issues to which Bruce should direct his testimony and evidence. The court then instructed Bruce to testify in narrative form.

Bruce then proceeded to testify on the property division and maintenance issues. He indicated that except for a few items, he had no objection to the property division. However, Bruce stated, "I don't know how I can pay any maintenance." He attributed his inability to pay maintenance to his numerous financial difficulties. During his testimony, the trial court stopped Bruce to explain how the court would calculate the figure to be used to determine maintenance. The court asked Bruce to confirm whether his position was that he was "unable to pay any maintenance," to which Bruce responded affirmatively. The court then indicated that it had completed its questioning, and directed Patricia's counsel that he could cross-examine Bruce.

At no time before or after the cross-examination did Bruce interpose to inform the court that he had not finished presenting his case or that he had more to say. When the cross-examination was completed, the next witness was called, and the record reveals no objection by Bruce. If Bruce had additional evidence to offer, it

was his responsibility to so notify the court. He did not.[1]

## Attorney's Fees

Finally, we address Bruce's argument that the trial court misused its discretion in awarding $35,000 in attorney's fees to Patricia as a result of overtrial.[2] Bruce maintains that he should have been given "formal notice of the overtrial charges and a separate hearing on the issue." He also contends that the trial court erred by failing to make findings as to Patricia's need, Bruce's ability to pay and the reasonableness of the fees.[3]

We first reject Bruce's contention that an overtrial hearing must be conducted as a separate hearing with formal advance notice. So long as the issue of overtrial is raised at trial or in posttrial briefs and the opposing party is given a reasonable opportunity to respond, we

---

[1] Bruce also complains that he did not call any other witnesses and that, other than his financial disclosure statement, there "was no organized attempt, either by documentary evidence or by testimony, to trace [his] dental practice income." We are unclear whether this is an offshoot of the issue we have just discussed or a separate, discrete issue. Regardless, these failings must be laid at Bruce's doorstep, not the trial court's. The trial court's rulings are supported by the evidence that was presented.

[2] Actually, the trial court awarded a total of $38,500 in fees to Patricia. Bruce does not dispute $3500 of this amount which pertained to a pretrial contempt motion.

[3] We do not read Bruce's argument to challenge the family court's threshold determination that Bruce was guilty of overtrial.

conclude that no formal motion hearing is necessary.[4] In this case, Patricia argued in her posttrial brief that she had been forced to incur substantial additional attorney's fees because of Bruce's conduct during the course of the proceedings. Although Patricia did not use the word "overtrial," that was the substance of her argument. Bruce had full opportunity to address this claim.

We next address Bruce's argument that the trial court failed to make the proper findings. The award of attorney's fees is within the discretion of the trial court and is subject to reversal only upon the trial court's misuse of that discretion. *See Ably v. Ably,* 155 Wis. 2d 286, 293, 455 N.W.2d 632, 635 (Ct. App. 1990). The trial court must normally address three factors when awarding attorney's fees: (1) the spouse receiving the award needs the contribution, (2) the spouse ordered to pay has the ability to do so, and (3) the reasonableness of the fee. *Id.*

When attorney's fees are sought in an overtrial situation, however, this court has previously stated that there is no need to make findings of need and ability to pay. *Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 484, 377 N.W.2d 190, 196 (Ct. App. 1985). The policy underpinning an overtrial attorney's fees award is to compensate the overtrial victim for fees unnecessarily incurred because of the other party's litigious actions. *See id.* Bruce's argument, if adopted, would gut this policy.

However, we agree with Bruce that the family court must still determine the reasonableness of the

---

[4] This is not to say that the family court may not conduct a formal hearing on the overtrial claim.

fees. A trial court's factual determination that an attorney's fee is reasonable provides guidance in determining a reasonable contribution. *See Holbrook v. Holbrook,* 103 Wis. 2d 327, 343, 309 N.W.2d 343, 351 (Ct. App. 1981).

It appears that the family court initially recognized the necessity for passing on the reasonableness of Patricia's attorney's fees because, at the close of the evidence, the court directed Patricia's lawyer to submit a detailed statement regarding his fees. Patricia's attorney, however, failed to do so.[5] Nonetheless, the court ordered Bruce to pay $35,000 of Patricia's approximate $50,000 attorney's fees.[6] Without a determination of the actual fees incurred and whether they were reasonable, this court cannot review the reasonableness of the contribution, whether it be a conventional contribution order or one based on overtrial. *See id.* at 344, 309 N.W.2d at 351.

We therefore conclude that the trial court erred when it awarded Patricia $35,000 in attorney's fees without first determining the reasonableness of the fees. While *Ondrasek* does not require the trial court to determine need or ability to pay in an overtrial situation, the case does not eliminate the trial court's obligation to ensure that the total fees are reasonable. We therefore reverse that portion of the judgment awarding $35,000 in attorney's fees to Patricia. We remand the case to the trial court with directions to conduct further proceedings on this question.

Costs are not awarded to either party.

---

[5] On appeal, Patricia's attorney states that he did not hear the family court issue this directive.

[6] Patricia stated in her posttrial memorandum that her attorney's fees would exceed $50,000.

*By the Court.*——Judgment affirmed in part; reversed in part and cause remanded with directions.