**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 29, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP611**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021FA564

**IN COURT OF APPEALS**
**DISTRICT II**

IN RE THE MARRIAGE OF:

ELIZABETH ANNE FITZGIBBON,

    PETITIONER-APPELLANT,

  V.

ADAM PAUL FITZGIBBON,

    RESPONDENT-RESPONDENT.

        APPEAL from an order of the circuit court for Winnebago County: BRYAN D. KEBERLEIN, Judge. *Affirmed.*

        Before Neubauer, Grogan and Lazar, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Elizabeth Anne Fitzgibbon appeals from an order of the circuit court denying relief from a judgment of divorce and ordering certain changes to the parties' marital settlement agreement. Based upon our review of the briefs and Record, we conclude at conference that this case is appropriate for summary disposition. *See* WIS. STAT. RULE 809.21 (2021-22).[1] For the following reasons, we affirm.

## Background

¶2 Elizabeth filed for divorce from Adam Paul Fitzgibbon in September 2021 after approximately eight years of marriage. Elizabeth and Adam share one minor child. According to the original marital settlement agreement (Original MSA) that they signed in December 2021 and filed (albeit with two missing pages) on January 21, 2022, Elizabeth and Adam agreed to joint custody of their child with "Elizabeth having approximately 60% of the overnights and Adam having approximately 40% of the overnights" ("60/40 child placement"). The Original MSA also reflects an agreed division of certain marital property and accounts, including "Etrade and Voya accounts" (which were to be awarded to Elizabeth) and a payment of $54,406 from Adam to Elizabeth "to equalize the marital property division."

¶3 In her initial brief to this court, Elizabeth asserts that she "realized how inequitable the Original MSA was" shortly after filing it with the circuit court, so she "requested updating it with Adam." Adam agreed to renegotiate the Original MSA. Elizabeth and Adam used an updated draft prepared by

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Elizabeth's attorney—the "Amended MSA"—as a starting point. The Amended MSA again provided for 60/40 child placement and for Elizabeth's ownership of the Etrade and Voya accounts. It also provided for monthly child support payments of $765[2] and an increased equalization payment of $77,000,[3] both from Adam to Elizabeth. Elizabeth and Adam made handwritten edits to the Amended MSA, reaching a final agreement on January 28, 2022. They both signed this "Hand-Edited Amended MSA," and Elizabeth delivered it, along with three photocopies, to the court for filing; neither party, however, prudently kept a copy for their own records.

¶4　　The parties attended their stipulated divorce hearing before a family court commissioner on February 7, 2022. The commissioner referred to the parties' MSA "approved by the Court on January 21, '22" and confirmed that each party agreed to 60/40 child placement, $765 monthly child support payments from Adam to Elizabeth, and waiver of spousal support. Each party also testified that the agreement reflected "approximately equal" property division. After this testimony, the commissioner found the marriage "irretrievably broken" and granted a divorce—incorporating the "fair and reasonable" MSA into the judgment—which was "final" as of the hearing date (February 7, 2022).

¶5　　The next month, Adam told Elizabeth that he had received the wrong MSA from the circuit court. She had not received the Hand-Edited Amended

---

[2] The provision for child support payments was on one of the missing pages of the court-filed Original MSA, but the parties later testified that the missing pages three and four from the Original MSA were identical to typed pages three and four of the Amended MSA; the same child support payment was included in the Original MSA.

[3] The listed values of the Fitzgibbons' two pieces of real estate had been increased in the Amended MSA.

MSA either, and it became clear to both parties that the commissioner had incorporated the Original MSA into their judgment of divorce rather than the Hand-Edited Amended MSA. The Hand-Edited Amended MSA had somehow been lost by the clerk of courts' office or the family court commissioner.[4] When the Fitzgibbons brought this to the court's attention, they were ordered to "reconfigure" the Hand-Edited Amended MSA within ten days of the April 26, 2022 hearing on the matter.

¶6     Adam and Elizabeth did not re-create the Hand-Edited Amended MSA through the rest of 2022. By that point, they had each filed multiple motions, including Adam's motion for "50/50" child placement and reduced child support and Elizabeth's motion to, among other things, reopen the judgment of divorce and declare the marital settlement agreement void. In response to the latter motion, Adam sought to enforce the Original MSA, arguing that it was a "complete agreement" and that the issue of the two missing pages would be resolved by issuing a subpoena to Elizabeth's former attorney for production of the full agreement. Elizabeth stated that she could not remember the terms of the Hand-Edited Amended MSA, which she now deemed "more financially inequitable than [she] had believed it to be on January 28," and—though she "regard[ed] [her]self as divorced"—attempted multiple times to come up with a new deal that would be, in her view, more equitable. While she wanted to preserve the 60/40 child placement and "child support numbers that [the family

---

[4] As noted above, the Original MSA (filed on January 21, 2022) had two missing pages. The Record does not reflect who was responsible for that error. But the circuit court made the determination that the responsibility for the loss of the Hand-Edited Amended MSA and three photocopies thereof (also filed in January 2022) rested with the clerk of courts or the family court commissioner's office, which is regrettable and has led to over a year of litigation and the expenditure of significant judicial resources.

court commissioner] validated" when she and Adam "were divorced … on February 7," she took issue with the diminishing value of the accounts that were to be awarded to her and with the fact that many of the Fitzgibbons' assets were not listed in any previous MSA.[5] She sought a "cash settlement baselined to the asset valuations on February 7" with a "compensatory amount … for Adam's … past-due child support … and financial malfeasance."

¶7 At a hearing on January 26, 2023, the circuit court reviewed the procedural history of the case, and both Adam and Elizabeth confirmed the facts set forth above regarding what had happened with the various versions of their MSA. Based primarily on its review of the transcript from the February 7 divorce hearing, the court held unequivocally that there was a "meeting of the minds" as to the stipulated terms of divorce and a valid judgment of divorce issued on that date. Therefore, according to the court, the question to be answered at this hearing was not *whether* there was an agreement but *what*, exactly, the agreement was. Noting the "multitude of motions" and "hundreds of documents" already filed by the parties, the court "anticipate[d] … more litigation coming out of the case" but stressed that it was necessary to determine, as a factual matter, "what the original agreement was." The court pointed out that it could not begin to assess the fairness of an agreement, for example, without determining the terms of the agreement—and that any question regarding misrepresentation, fraud, duress, or the like in the context of the property division would be "a separate motion." Ultimately, the court stated, "[T]his is not a family issue right now; this is a

---

[5] These were the assets sometimes characterized as the "basement assets" of the parties, consisting of an "extensive weapons collection, tools, machinery, a safes [sic] full of precious metals and cash, food processing and canning equipment, and perishable foodstuffs among other items."

contract issue," and all the court needed to determine at this stage was "what did they agree to in February."

¶8      The circuit court then employed a procedure to determine the terms of the Hand-Edited Amended MSA to which Adam and Elizabeth agreed on February 7, 2022.  Without objection from either party, and as the parties had done, the court used the Amended MSA as a starting point, giving each party a copy of that document and asking them to separately write in the changes they believed were made to that document with handwritten edits on January 28, 2022.  After comparing the parties' notations, the court asked further questions and made "credibility determinations" to re-create the agreement reached by the parties immediately before the February 7 divorce hearing.

¶9      Adam testified to his belief that he and Elizabeth had agreed to a handwritten edit providing that half of one account (either the Etrade or Voya account, he could not remember which) was to go to him.  He further testified that the Etrade account was worth approximately $29,000 while the Voya account was worth approximately $11,000.  Elizabeth corrected the name of their child (which had been mistyped as "Adam"), testified that she was confident no custodial or placement matters were amended, and reiterated multiple times that she couldn't remember anything else.[6]  When questioned by the court, Adam testified that the $77,000 payout in the agreement was meant to reflect half of the value of the couple's real estate plus "$5,000 … to cover for guns and miscellaneous things in

---

[6] Indeed, when asked by the circuit court whether she could recall if the value of the Etrade account was "$1 million or $10" when the parties reached their agreement, she stated, "I do not recall."  She did eventually testify that her records indicated the value of the Etrade and Voya accounts together was $44,952.

the basement." Elizabeth—who, like Adam, had not made any notation to the $77,000 equalization payment in the Amended MSA—stated that that "would not have been the final equalization payment" but could not recall what had changed. She did not "recall exactly what the changes were" or "exactly what [change], if anything, was made to the number 77,000."

¶10     After considering the "entirety of the sworn testimony" and the credibility of the witnesses—and questioning on the record "how there could be no recollection of what was in there"—the circuit court ultimately determined that the Amended MSA had been altered by the parties in two ways: to correct the name of their child and to award half of the Voya account to Adam. All other provisions, including the $77,000 equalization payment, 60/40 child placement, $765 per month in monthly child support payments from Adam to Elizabeth, and other property division[7] remained as written in the Amended MSA. This MSA— the "January 6 MSA"—was entered into the Record and ordered retroactive to the date of divorce, which was February 7, 2022. Elizabeth appeals, asserting that the judgment of divorce was invalid and should have been declared void, attacking the January 6 MSA on both procedural and equitable grounds, and seeking her attorney's fees.

---

[7] In response to Elizabeth's stated concern regarding certain assets including "metals and cash that were in [the Fitzgibbons'] safe, workshops and tools, [and their] weapons collection," the circuit court asked whether Elizabeth knew about those assets at the time of the agreement, to which Elizabeth responded affirmatively, and then questioned why that property would not be included in the MSA provision stating that Adam was awarded "any other disclosed asset in his possession at the time of the final hearing." As discussed more fully below, because construction of the terms of the MSA is not within the scope of this appeal seeking to void it, we do not consider the issue of whether these assets were encompassed in those provisions or equitably divided.

*Discussion*

¶11    Elizabeth's first argument is that the February 7, 2022 judgment of divorce was invalid and should have been declared void for failure to satisfy the statutory requirements of a stipulated divorce. *See* WIS. STAT. § 767.34. She contends that "[n]o written, mutually-agreed MSA existed" on February 7 that complied with WIS. STAT. § 241.02(1), that no MSA constituting a "meeting of the minds" was approved by the parties, that any agreement was not binding under WIS. STAT. § 807.05, and that neither the family court commissioner nor the circuit court approved an MSA that resolved all material issues as required by WIS. STAT. § 757.69(1)(p)1. and Winnebago County Circuit Court Rule 3.11.B.[8]

¶12    Pursuant to WIS. STAT. § 767.34, "parties in an action for … divorce … may, subject to the approval of the court, stipulate for a division of property, for maintenance payments, for the support of children, or for legal custody and physical placement, in case a divorce … is granted." Here, neither party disputes that a document reflecting the parties' stipulated agreement existed as of February 7 or criticizes the circuit court's conclusion, based on their consistent testimony, that it did; however, Elizabeth argues that there were defects in this document making it unenforceable and void.

¶13    First, Elizabeth cites the statute of frauds, which requires certain agreements to be in writing. She does not develop any argument or cite any

---

[8] Elizabeth cites the 2020 version of Rule 3.11.B, which was in effect at the relevant time and can be found at: https://www.co.winnebago.wi.us/sites/default/files/uploaded-files/winnebagocountylocalcourtrules2020.pdf. In the 2023 version of the rules, this rule was amended and renumbered to Rule 3.05, available at: https://www.wisbar.org/Directories/CourtRules/Wisconsin%20Circuit%20Court%20Rules/Winnebago%20County%20Circuit%20Court%20Rules.pdf.

authority to support her apparent contention that it applies to divorce stipulations as well as to "[e]very agreement, promise or undertaking made upon consideration of marriage, except mutual promises to marry." *See* WIS. STAT. § 241.02(1)(c). Given the concession in her opening brief that "on January 28 …, Adam and Elizabeth completed negotiations, hand-editing a printed copy of the Amended MSA"—in other words, that the Hand-Edited Amended MSA (to which she and Adam agreed immediately before their divorce hearing) was in writing—it does not matter. There is no merit to Elizabeth's statute of frauds argument. Elizabeth also concedes that "both [Adam and Elizabeth] signed"—in other words, approved—this MSA. WISCONSIN STAT. § 807.05 explicitly recognizes as binding stipulations "made in court … and entered in the minutes or recorded by the reporter, *or made in writing and subscribed by the party to be bound thereby*." (Emphasis added.)

¶14 From there, Elizabeth argues that "no MSA was approved by all parties" and asserts that the divorce required approval from the family court commissioner pursuant to WIS. STAT. § 757.69(1)(p)1. and then from a judge pursuant to Winnebago County Court Rule 3.11(B)). Application of a statute to the facts is a legal question that we review de novo. *Xerox Corp. v. DOR*, 2009 WI App 113, ¶46, 321 Wis. 2d 181, 772 N.W.2d 677. Again, Elizabeth fails to develop the argument except to say that "[n]o Judge was involved before hearing Elizabeth's Motion to Declare as Void … on November 16." We see no merit to her argument such as it is. The statute in question states that a court commissioner may

> [p]reside at any hearing held to determine whether a judgment of divorce … shall be granted if both parties to a divorce action state that the marriage is irretrievably broken … and that all material issues, including but not limited to division of property or estate, legal custody, physical

9

> placement, child support, spousal maintenance and family support, are resolved…. A circuit court commissioner may grant and enter judgment in any action over which he or she presides under this subdivision unless the judgment modifies an agreement between the parties on material issues.

WIS. STAT. § 757.69(1)(p)1.

¶15 The parties testified under oath on February 7, 2022, that their marriage was irretrievably broken and that they had resolved all of the enumerated material issues. The commissioner explicitly confirmed important terms in the Hand-Edited MSA, including custody, placement, child support (which he noted "exceeds standards"), and maintenance. He confirmed that each party believed their agreed upon property division was approximately equal. He then granted and entered a judgment of divorce. *See* WIS. STAT. § 757.69(1)(p)1.

¶16 On its face, the local rule Elizabeth cites does not provide for independent approval by a circuit court judge; it states that an agreement "intended to be binding" "shall be submitted to the Family Court Commissioner for approval prior to submission to the presiding Circuit Court Judge" and that "[i]f the agreement is approved by the Family Court Commissioner, it will be forwarded to the presiding Circuit Court Judge for signature and entry." Winnebago Cnty. Court Rule 3.11 B.2. To the extent it can be interpreted to require an additional level of approval beyond the commissioner before a judgment of divorce can be entered, we note that "local rules may not be inconsistent with state rules or statutes." *See **Hefty v. Strickhouser***, 2008 WI 96, ¶59, 312 Wis. 2d 530, 752 N.W.2d 820 (citing WIS. STAT. § 753.35(1); emphasis removed).

¶17 This brings us to Elizabeth's final contention supporting her argument that the February 7 judgment of divorce should have been deemed void:

she asserts that a family court commissioner "can only grant divorces if 'all material issues … are resolved'" and that there were multiple material issues unresolved between Adam and Elizabeth after February 7, 2022. *See* WIS. STAT. § 757.69(1)(p)1. In support, she points out that following their divorce hearing, she and Adam disputed financial issues, custody, child support, placement schedules, and many other issues such that "even if there had ever been a 'meeting of the minds' … by the February 7 divorce hearing, the terms were misunderstood or forgotten." This is a legal issue involving application of a statute to facts which we review independently. *See **Xerox Corp.***, 321 Wis. 2d 181, ¶46.

¶18 Crucially, Elizabeth does not make any effort to point out a particular "material issue" that was missing from the Hand-Edited Amended MSA. It would be hard for her to do so given her sworn testimony at the divorce hearing that issues including child custody and placement were agreed and "in [her] child's best interest" and that property division was "approximately equal." While Elizabeth may have after-the-fact misgivings, she has not identified any basis for this court to determine that the MSA was invalid, that the requirements of WIS. STAT. § 757.69(1)(p)1. were not fulfilled at the time of divorce, or that the divorce should later be deemed void.

¶19 In this case, the Record reflects efforts by both parties to *change* the terms of their MSA more than it reflects a *lack* of material terms. Elizabeth admitted in one of the affidavits she submitted to the circuit court that in January 2022—before the February 7 divorce hearing—she sought to split the marital assets in a way that would provide "sufficient start-up funding for [her] post-marriage life," but that after the hearing, in April-June 2022, she sought to change the financial terms of the Hand-Edited Amended MSA due to the falling value of some of the assets she had been awarded and her "much greater need for

cash," among other reasons. She sought (and still seeks) to preserve the parts of the Hand-Edited Amended MSA that she preferred: the 60/40 child placement and monthly child support payment "exceed[ing] standards" that Adam was trying to change via his motion in April 2022. On this Record, we cannot determine that the circuit court's determination "that there was an agreement, a meeting of the minds, a contractual agreement" as to all the material terms necessary for a judgment of divorce was in error, even as we acknowledge that court's prediction that the January 6 MSA is "a starting point to what … is probably going to be more litigation."

¶20 Second, Elizabeth attacks the January 6 MSA on procedural grounds, arguing that it was the result of an improper and unfair procedure and should not have been applied retroactively to the date of divorce. This argument rests almost entirely on her contention that the parties were not properly divorced and that there was "no MSA before January 6, 2023" so that the January 6 hearing constituted "forc[ing] terms" on the parties. As we have already discussed, this contention is incorrect. The circuit court articulated at the January 6, 2023 hearing that it was granting Elizabeth's motion for relief from the February 7, 2022 judgment of divorce due to its finding of a "very unique, exceptional" circumstance—the court's loss of the Hand-Edited Amended MSA—that justified reopening the judgment of divorce to "clarify" it pursuant to WIS. STAT. § 806.07(1)(h). Although it should be used "sparingly," a circuit court has discretion to grant relief from a final judgment under "extraordinary circumstances." *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541, 549-50, 363 N.W.2d 419 (1985); *see also Thoma v. Village of Slinger*, 2018 WI 45, ¶30, 381 Wis. 2d 311, 912 N.W.2d 56. "[U]pon consideration of any other factors bearing upon the equities of the case, the court shall decide what relief if any

should be granted the claimant and upon what terms." ***M.L.B.***, 122 Wis. 2d at 557.

¶21    Here, the parties seem to agree, correctly, that the circuit court's loss of the Hand-Edited Amended MSA (and incorporation of the Original MSA into the original judgment of divorce) was an extraordinary circumstance that justified relief from that original judgment.  Indeed, it was Elizabeth who moved for relief from judgment under WIS. STAT. § 806.07(1)(h).  "Once [Elizabeth] invoked the [circuit] court's discretion under sec. 806.07 to amend the decision, the court had the power to correct it to the disadvantage of [Elizabeth] as well as to [her] advantage." *See **Anchor Sav. & Loan Ass'n v. Coyle***, 148 Wis. 2d 94, 106, 435 N.W.2d 727 (1989).  This court will uphold the circuit court's ruling and grant of relief unless there has been an erroneous exercise of discretion.  *See **id.*** at 106-07 (holding that trial court's decision to grant relief under § 806.07 and to conduct a hearing to gather evidence necessary to correct the original judgment was not an erroneous exercise of discretion).

¶22    We conclude that the circuit court's procedure for determining the appropriate relief from the original judgment of divorce—conducting a hearing to reconstruct the Hand-Edited Amended MSA with the benefit of oral testimony and the ability to assess the credibility of the witnesses—constituted an appropriate exercise of the court's discretionary ability to decide what relief should be granted. "The loss or destruction of a memorandum does not deprive it of its effect … and oral evidence of the making and contents of the memorandum is admissible." RESTATEMENT (FIRST) OF CONTRACTS § 216 (1932); *see also **Mitchell Bank v. Schanke***, 2004 WI 13, ¶¶7, 42, 268 Wis. 2d 571, 676 N.W.2d 849 (holding, when a bank sought to enforce a note that was memorialized in a document destroyed in a flood, that "the Bank was not required to produce the Note in physical form, if it

could establish the Note's existence, terms, and conditions through other evidence"). Importantly, although she uses the term "due process" in her brief, Elizabeth does not identify any "unfairness" in the court's procedure except to say that she did not agree to the terms of the January 6 MSA—*at that time in 2023*—and to suggest that the court was therefore "forcing terms" on her. Elizabeth is missing the point that the court found there was an agreement as of the February 7, 2022 hearing and that she had every opportunity to disclose her version of the terms of that agreement. Although she insists that the January 6 MSA is a "lost MSA counterfeit[]" and not a "facsimile" of the Hand-Edited Amended MSA, she does not identify a single term that she believes was different in the Hand-Edited MSA; she only says she cannot remember what was in the latter document. We find, in this unique and rather unusual circumstance, no erroneous exercise of discretion in the procedure employed in granting relief from the original judgment of divorce and to amend that judgment with a corrected MSA.

¶23     This leads to Elizabeth's third argument: that the January 6 MSA is inequitable and should be invalidated for that reason even if it is deemed procedurally correct. She cites ***Button v. Button***, 131 Wis. 2d 84, 89, 388 N.W.2d 546 (1986), which states "that an agreement is inequitable" unless "each spouse has made fair and reasonable disclosure to the other of his or her financial status; each spouse has entered into the agreement voluntarily and freely; and the substantive provisions of the agreement dividing the property upon divorce are fair to each spouse."

¶24     Elizabeth moved the circuit court for relief from the January 6 MSA on these grounds on February 16, 2023. There is no decision on that motion in the Record, and the order from which she appeals—entered on January 11, 2023—does not address this issue. Thus, this issue is beyond the scope of appeal and is,

as the circuit court said in January, "a separate motion." *See **Gruber v. Village of N. Fond du Lac***, 2003 WI App 217, ¶27, 267 Wis. 2d 368, 671 N.W.2d 692 ("We are loath to reverse a trial court on an issue that the trial court never had the opportunity to address.").

¶25 Finally, Elizabeth seeks attorney fees and other costs associated with her January 6 MSA-related litigation. Pursuant to WIS. STAT. § 767.241(1)(a), the circuit court may, in its discretion, "[o]rder either party to pay a reasonable amount for the cost to the other party of maintaining or responding to an action affecting the family and for attorney fees to either party." ***Id.***; *see also **Johnson v. Johnson***, 199 Wis. 2d 367, 377, 545 N.W.2d 239 (Ct. App. 1996).

¶26 Elizabeth states that the circuit court "made no evaluation or award of fees/costs[,] erroneously disregarding her need, fee/cost reasonableness … and parties' ability to pay." However, she points to only one line in the Record—a line in her motion to reopen the original divorce judgment—where she made any attempt to recover fees; in that line, she asked for an award of "all costs and attorney fees incurred in having to bring this Motion." She points us to nothing in the Record where she submitted the evidence necessary to decide an award of fees, and, when asked if there were any other issues that needed to be addressed "regarding the creation of the MSA" at the January 6, 2023 hearing, her counsel did not bring up attorney fees. We decline to reach this issue absent any attempt to seek relevant factual findings supporting the litigant's position in the circuit court.

¶27 For the foregoing reasons, we affirm the order of the circuit court incorporating the January 6 MSA into the parties' judgment of divorce.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.